P. & G. and A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Syllabus.

THE PENSACOLA & GEORGIA RAILROAD COMPANY AND THE ATLANTIC & GULF CENTRAL RAILROAD COMPANY, APPELLANTS, VS. SPRATT & CALLAHAN, APPELLEES.

1. The object and purpose of an injunction is to preserve and keep things in the same state or condition, and to restrain an act which, if done, would be contrary to equity and good conscience, and is the appropriate relief when the remedy at law is subsequent to the injury, and the effect cannot be adequately compensated.

2. To support a motion for an injunction, the bill should set forth a case of probable right, and a probable danger that the right will be defeated without the interposition of the Court. It interposes between the complainant and the injury he fears or seeks to avoid. If the injury be already done, the writ of injunction can have no application, for it cannot be applied correctively so as to remove it.

3. Under the prayer for "general relief," such relief may be afforded to the complainants as is *consistent* with the case made in the bill, provided the relief granted does not conflict with that specifically prayed.

4. A Court will not suffer a defendant to be taken by surprise and permit a plaintiff to neglect and pass over the special prayer he has made for relief and take another decree, even though it be according to the case made by his bill.

5. The plaintiff cannot desert specific relief prayed, and under the general prayer ask special relief of another description. Under the general prayer the plaintiff shall have such other relief as is *consistent* with the case made and the special prayer, and no more.

6. The exception to this general rule is, when there is an *obstruction* to the Court's granting the particular relief prayed. In such cases the plaintiff may take a different decree under the general prayer.

7. The insolvency of the debtor is never a sufficient reason of itself for the exercise of the extraordinary power of the Court by way of injunction. There must be some other equitable ground combined with insolvency.

8. To authorize the interposition of the Court to stay waste it must appear to the satisfaction of the Court that, unless its aid is given, irreparable injury will be done to the complainant or his property.

9. The existence of a "lien" on behalf of the complainant, will not entitle him to an injunction to restrain the defendant in the free use and enjoyment of his property.

10. In cases of lien, to entitle a complainant to the aid of an injunction, he must show that the free enjoyment of the property by defendant will, in all probability, tend to its injury or destruction to an extent that will impair its value as a security for his demand and peril its ultimate payment.

Appeal from Columbia Circuit Court.

This case was decided at Tallahassee.

A statement of the case is contained in the opinion of the Court.

*J. M. B. Lovell*, for Appellants :

I. Every essential fact necessary to obtain the relief granted to the complainant must be stated in the bill, that the defendant may properly prepare his defence. The decree rendered in this cause by the Judge below, is not sustained by any of the allegations of the bill of complainants, or by any proofs in the cause ; and is founded on facts not put in issue by the pleadings, and for that cause the judgment of the court below should be reversed. Story's Eq. Plead., §257 and 257 a ; Banks vs. Carneal, et al., 10 Wheat., 181, 189 ; Crockett vs. Lee, 7 Wheat., 522 ; Stuart vs. Mech. & Farmer's Bank, 19 Johns., 496 ; Robson vs. Harwell and wife, 6 Geo., 596. Even an admission in the answer will not cure the want of the charge in the bill. Story's Eq. Plead., §263, 264.

II. An injunction will not be granted under the prayer for general relief unless it is agreeable to the case made by the bill ; and the complainant cannot desert the specific relief prayed for in the bill, and under the prayer for general relief obtain other specific relief inconsistent with the prayer in the bill for specific relief. Story's Eq. Plead., §40, 41, 42 and 43 ; Marine & Fire Insurance Bank vs. Early et al., R. M. Charlton's Rep., 280 ; Hiern vs. Mill, 13 Vesey, 119 ; Wilkin vs. Wilkin, 1 Johns., Ch.

28                     SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel

115, 117; Butler et al. vs. Durham, 2 Kelly, Geo. R., 420; English vs. Foxhall, 2 Peters, Curtis' condensed vol. 8, 222.

III. But it may be said that it lies in the discretion of the Chancellor to grant the injunction or not. What does this term discretion of the Chancellor mean? It is not the arbitrary will of the Judge, but it is a sound and reasonable discretion, based upon established precedents and regulated upon grounds which make it judicial. 1 Fonblanque's Eq., 4th Am. Ed., 10, 20, 21, 39 and 40; Seymour vs. Delancy, 3d Cowen, 505; 2d Story Eq. Juris., §769; Mathews vs. Terwillinger, 3 Barb., S. C. R., 55; Rex. Wilkes, Burrows' Rep. 2,539.

But it may be urged that the decree granted in this cause, is such a decree as the Chancellor might reasonably grant to prevent waste, although not directly sustained by the allegations of the bill. This view of the case leads to the inquiry, whether, under the allegations and statements of the Bill and answers, any such decree could be properly made under any aspect of the cause at bar. I contend that it could not for the reasons:

I. The injunction should not be granted on this bill, as it no where appears on the face of the bill that the running of the cars of defendant over the road will so impair its value that the property will not be sufficient to respond to any judgment the complainants may obtain; this allegation should appear with certainty. Story's Eq. Plead., Sect. 240, 241, 242, 248, 249, 250. The answer in this case alleges exactly the contrary, even if the fact was in the bill directly alleged.

II. The complainants have no lien, legal or equitable, upon the railroad of defendants. First: Because it appears by the bill that complainants contracted with the Confederate States of America, and contracting with a *Government*, could not obtain a *lien* against the *Government*; a lien presumes a legal right with a legal and judicial remedy. Gov-

ernment cannot be sued, there can be no lien against Government, and ergo no lien against the defendants holding under Government. Second : Because railway contractors do not take or have mechanic's lien on road for their work. 1st Redfield on Railways, page 444, section XX ; Dunn vs. North Missouri R. R., 24 Mo., 493 ; Blair vs. Corby, 29 Mo. R., 480, 486 ; Lien Law, Thomp. Dig., 408.

III. Injunction should not be granted to restrain a mere trespass where the injury is not irreparable. Jerome vs. Ross, 7 Johns., ch. 315, opinion of Court, p. 321, 322, 330, et seq. to 346 ; Stevens vs. Beekman, 1 John. ch., 318 ; Eden on Injunction, 229, et seq., 2 American Edition ; 3d Eng. R. R. cases, p. 253 ; 1 Page's Chan., 17. Nor where the right is doubtful. Hart vs. Mayor, &c., 3d Page, 212, 214 ; North River St. Boat Co. vs. Livingston, 3 Cowen, 713 ; Snowden vs. Noah, 1 Hopkins, ch. 347, 353 ; Bond et al. vs. Little, 10th Geo. 400 ; Waterman's Eden on Inj. p. 1, chap. 1, note 1, vol. 1. And if the bill alleges that the *defendant claims title adverse* to the *complainant*, the *complainant states himself out of Court.* Eden on Inj., 2d Am. Ed., 229 to 235; Storm vs. Mann, 4 Johns., ch. 21; Story Eq. Juris., sec. 918 ; Pillsworth vs. Hopton, 6 Vesey, 51.

IV. An injunction will never be granted to stay waste when defendant is in possession, claiming and holding adversely. Nevitt vs. Gillispie, 1 Howard Miss., 108; Storm vs. Mann, 4 Johns., ch. 21 ; Pillsworth vs. Hopton, 6 Vesey, 51 ; Lansing vs. North River Steamboat Co., 7 Johns. ch. 162.

V. Injunction will not be granted where the complainant is guilty of Laches. Story's Eq. Juris., sec. 959a ; Southard et al. vs. Morris Canal Co., Saxton, ch. N. J. Rept., 518.

VI. Where the right of the complainant depends on the legal effect of a covenant, no injunction will be granted until the legal effect of the covenant be settled, (legality of

contract here denied) and where the loss on the one side can be ascertained, but on the other could not, if the injunction issued, the court will dissolve the injunction and put the parties on terms. In this case the complainants have given no bond of indemnity for granting the injunction. Rigly vs. The Great Western R. R., 4th Eng. R. R. cases, top page 365, marg. 491 ; Hartridge et al. vs. Rockwell et al., R. M. Charlton's, 260, 266 ; Story Eq. Juris., sec. 959a, 959b ; 28 Geo. 803, Weaver vs. Garner.

VII. A Court of Equity will not restrain by injunction an insolent debtor from transferring his property before judgment. 1 Hopkins, ch. 365, Moron vs. Dawes ; Wiggins et al. vs. Armstrong et. al., 2 Johns., ch. 144 ; Bellamy vs. Bellamy, admr., 6 Fla. Repts., 101.

VIII. An injunction will be dissolved on the coming in of the answer denying the equities of the bill. Cowles vs. Carter, 4 Iredell Eq., 106; 5th Iredell Eq., 26 ; 6th Iredell Eq., 225 ; 8th Iredell Eq. 296.

*M. D. Pappy* on the same side :

For appellants it is maintained that the order granted by the court below is not sustained by the allegations or prayer of the bill.

First. There is no special prayer for the order granted, and under the general prayer specific relief cannot be granted, unless such relief is agreeable to the case made in the bill. Story's Eq. Pl., Sec. 41; English vs. Foxhall, 2 Peters, 229, and authorities cited by Mr. Lovell.

The rule is, that if the bill contains charges putting facts in issue that are material, the plaintiff is entitled to the relief which those facts will sustain under the general prayer, but he cannot desert specific relief and under the general prayer ask specific relief of another description, unless the facts and circumstances charged by the bill will consistently,

with the rules of court, maintain the relief. Lord Erskine, in Hern. vs. Miles, 13 Vesey, 118, [119;] Blount vs. Hay, 4 Sanford Ch. R., 362, and cases cited by Mr. Lovell.

Second. The injunction ordered was not necessary for the protection of the alleged rights or claims of the complainants, because the property on which the alleged lien is said to exist was abundantly ample to respond to any decree that could be made, and was a fixture that could not be removed.

Third. In order to support a motion for an injunction, the bill should set forth a case of probable right and a probable danger that the right would be defeated without the special interposition of the court. 1 Randolph, 206, Mitford's Pleadings.

In this case there is not even a possibility of danger by any human calculation.

The mere allegation of a complainant that irremediable danger or irreparable mischief will insue is not sufficient, but to entitle a party to an injunction the facts must be stated to show that the apprehension of injury is well founded. Ansley vs. Lukeep, 9 Gill & John., 468.

Fourth. The order granted by the court below is a decision upon the merits by anticipation, for it is only after a final decree that the court would, in any event, be justified in impounding the revenues of the road. The object of an injunction before answer is to preserve all things in their then condition, not to determine any by anticipation or to undo or restore any thing. Thebeaut vs. Canova, 11 Fla. R., 168.

The injunction is a preventive remedy. If the injury complained of be already done, the writ can have no operation, for it cannot be applied correctively (as it is attempted in this case,) so as to remove it. It is not used for the purpose of punishment *or to compel persons to do right*, but simply to prevent them from doing wrong. Att'y Gen'l vs. N. J. R. R. Transportation Co., 2 Green's Ch., 136.

32         SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

An injunction is a secondary process, and must be asked in aid of some primary equity, which must be disclosed in the same bill that prays it. Hilliard on Inj., 12.

Fifth. The complainants object to the lease of the road and make that the basis of the order.

First. It is not made in the bill.

Second. They are not the parties to make it.

In Arthur vs. Commercial & Railroad Bank, 9 Smedes & Marsh., 430, the court say: The question as to the power of the corporation (to assign away the railroad and the franchise annexed to it,) need not now be considered. That is a matter between the State and the Corporation, with which third persons have nothing to do.

If the lease to the A. & G. Co. is *ultra vires* and void, so was necessarily that to the Confederate government, through which complainants' alleged claim is said to have arisen.

Sixth. There is no lien legal or equitable. There was no contract between complainants and defendants. There was no fraud, and none is alleged, not even mistake. Vide authorities cited by Mr. Lovell.

Seventh. A lien for meliorations is only where a party makes them on the supposition that he is the owner and is not aware of a defect in his title, and the true owner stands by without disclosing his title. Story, § 388.

In all these cases the doctrine proceeds upon the ground of fraud or what is akin to it. Story's Eq., § 391, 1238.

*J. P. Sanderson* for Appellees.

The statement of the case has already been sufficiently presented to the court by the counsel who have preceded me, and I shall, therefore, proceed to the discussion of such points as seem to me important in the elucidation of the case.

In doing so, I shall briefly call the attention of the court to such parts of the record as are material for my purposes.

I propose, therefore, to consider together exceptions 2d, 3d and 4th, and lay down the following proposition as governing the case: When the bill sets forth a probable right and a probable danger that the right would be destroyed, an injunction will be granted. Reed, et al. vs. Dews, et al., R. M. Charlton, 356.

The second, third and fourth exceptions present but one question for the consideration of the court.

2d. Because the order is not supported by any prayer in the bill.

3d. Because it is not embraced in any prayer in the bill.

4th. Because it is not warranted by the relief prayed.

Prayer 1st. For answer all and singular the allegations, &c.

Prayer 2d. The second prayer (page 28 of bill,) prays, on final decree, a sale of so much of said branch road as lies between the State line and Live Oak Station, and out of proceeds to satisfy complainants' lien.

Prayer 3d. Asks for an account.

Prayer 4th. A general prayer for relief.

Prayer 5th. Asks an injunction restraining both companies from, in any manner, using said road, and from committing waste thereon.

### DECREE.

1st. Takes jurisdiction of the parties.

2d. That complainants' bill exhibits equities that entitle complainants to the interposition of the equitable jurisdiction of the court.

3d. Enjoins defendants, &c., from executing, or in any wise carrying into effect the agreement of defendants, disclosed by their answer, for lease or sale. Also enjoins from sale, leasing or any disposition of same.

34 SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

4th. Enjoins the A. & G. Co. from paying to the P. & G. Co. any of the consideration for the sale or lease or attempted sale or lease set forth in said agreement.

5th. Enjoins the A. & G. Co., &c., from disposing in any manner any of the income and earnings of the portion of the branch road lying between Live Oak and the Georgia line, except in payment for the necessary repairs of said road and necessary expenses of operating the same, having due regard to economy, &c.

6th. Requires the A. & G. R. R. Co. to make a monthly report to the court of the amount of receipts and disbursements for said portion of road, to be verified, &c.

7th. Enjoins the P. & G. R. R. Co. from disposing of any moneys received for freight or passage over said road until the further order of the court, and to make monthly reports, &c.

8th. Orders defendants to show cause on the 10th day of May, 1867, if any they have, why a receiver should not be appointed.

The question presented for the consideration of the court is, the decree, there being prayers for specific relief, account, sale and payment, injunction and prayer for general relief, inconsistent with the case made by the bill.

The decree does not order a sale, is not a final decree.

It does not order an account of complainants' bill to be taken as prayed.

It does not grant an injunction in the terms and to the extent prayed.

The object of the bill, as shown with certainty, is to ask the interposition of the court to protect and enforce an equitable lien for work and materials furnished by artisans and mechanics upon a certain specified piece of railroad, and ascertain the value thereof and enforce payment therefor.

The decree determines that complainants have an equitable lien and are entitled to the interposition of the court.

It enjoins the execution of a contract and payment of the consideration, which, if executed and carried into effect, might deprive them of their lien.

It enjoins the defendants respectively from disposing of the earnings of the road and to report amounts, &c., and then requires them to show why a receiver should not be appointed.

It is, therefore, contended that there is no relief granted by this decree, which is not agreeable to the case made by the bill and properly grantable under the prayer of general relief. See, on this point, Story's Eq. Pld., p. 43, § 40 and n. and § 41.

It is usual to pray for specific relief, but it has been held unnecessary that, under a prayer for general relief, without a specific prayer for the particular relief complainants think themselves entitled to, will be sufficient, and the particular relief may be prayed for at bar. Welford's Eq. Pld., 106; Wilkinson vs. Beal, 4 Madd., 408; Grimes vs. French, 2 Atk., 141; Beaumont vs. Boultres, 2 Vesey, 494; Heine vs. Hill, 13 Vesey, 119; Barbour's Ch. Pr., vol. 1, 37; 1 Dall. Ch. Pr., p. 437.

Other relief may be granted under a prayer for general relief, than that particularly prayed for, provided it be agreeable to the case made by the bill. English vs. Foxhall, 2 Peters, [612,] 8 condensed, 229.

There is a special prayer for an injunction as required where such relief is sought by the bill.

The decree made is agreeable to the nature of relief sought, and sustainable under the prayer for general relief, without the aid of the prayer for injunction.

In this case no injunction was granted. It is true the decree operates as an injunction, in some respects, in a modified form, but not inconsistent with the general prayer.

If the court should construe the decree in the nature of an injunction, though different from the one prayed for, it

is the province of the court to mould or modify it, in its discretion, so as to attain the object sought.

Defendants have no cause of complaint for want of notice. They had notice of an application for an injunction to restrain them from operating the road.

Where a bill prays for a particular relief, and other relief, the orator can have no other relief inconsistent with that prayed for, but otherwise when the prayer for relief is in the disjunctive. 1 Ed. Ch., 654, Willshin vs. Marfleet; Mitford's Ch. Pld., p. 41, n. ; Cotten vs. Ross, 2, Page, 396–'8.

It is no objection to the decree that it is inconsistent with the specific prayer for relief when it is consistent with the case made by the bill, and the bill contains a prayer for general relief. Wilkin vs. Wilkin, 1 John. Ch. R., 111 and 117; Crumbaugh vs. Smock, 1 Blackf., 305.

The major includes the minor, and the cases cited by the learned counsel for appellants are of this character. R. M. Charlton, 280—good doctrine; 13 Vesey, 119; 1 John. Ch. R., 115; 2 Kelly, 420—cited by appellants.

But if the court has erred this court can grant full relief or send the bill back for the court below to do so. Southern Life and Trust Co. vs. Cole, 4 Fla., 363.

It was urged by counsel that, on the ground of public inconvenience, the court would not grant an injunction. Rigby vs. Great Western Railway Co., 4 Eng. R. R. cases, 128.

On the contrary, says, Mr. Williams, in his treatise on injunction, that slight infringement in respect of land by a large company of persons, ought to be watched with a careful eye and repressed with a strict hand by a court of equity, when it can exercise its jurisdiction. Hill'd on Injunctions, p. 28, § 42.

It is contended by appellants that respondents should proceed with their suit at law and obtain their judgment before they can have a standing in this court.

There is no doubt as to the principle that when a party

has a complete *remedy* at law equity, will not interfere. But this will not apply when, from circumstances not within his control, he cannot avail himself of his remedy. Hill'd on Inj., 15.

The answer is, such circumstances do exist, and are disclosed by the record, viz : Insolvency of P. & G. R. R. Co.

Attempted disposition of the only property not encumbered.

The vendee or lessee, the A. & G. R. R. Co., reside without jurisdiction of court. Hill'd on Inj. p. 17 and 22, § 37.

These are sufficient without multiplying cases to give this court jurisdiction.

It was contended that the bill does not allege irreparable injury in so many words. This is unnecessary if, from the statement of the grievances, it appears that the injury would be irreparable, and the court can discover it from the allegation of the facts. Hilliard on Inj., p. 20, § 32.

The interposition of courts of equity is successfully invoked to restrain the sale or other disposition of property, *pendente lite.*

The record shows this to be a case coming within that principle. 2 Story's Eq. Ju., § 907 and 8.

The case of Canova vs. Thebaut, was cited by Mr. Papy, for the purpose of showing the object of an injunction, and although not explained, I presume it is cited to establish the point that injunctions will only issue to preserve things in their then condition.

The principle there laid down was before answer filed. Answers are filed in the case. See case 11 Fla., 168.

The doctrine is clearly presented in Hilliard on Inj., p. 3, §5, and is that such a restraint should be imposed as may suffice to stop the mischief complained of, and when it is to stay injury to keep things as they are for the present.

It is conceded that the action of the court comes clearly within this principle. It stops transfer of property. It al-

lows use of property, but requires an account, and after keeping the property in repair, holds the balance for any injury that may be sustained, thus stopping the injury complained of. Hilliard on Inj., p. 3, §5.

It was contended that complainants are in laches and therefore deprived of their rights.

Record shows a suit commenced in July, 1866, and as soon as they had any knowledge of an attempt to dispose of road, filed bill on 17th April, 1867.

Answers do not bring knowledge home to complainants, while record shows a state of facts which brings home with absolute conviction, a knowledge of their claim to both defendants.

An injunction may issue to stay trespass.

Defendant, the Atlantic & Gulf Railroad, set up in their answer the grounds of their defense, and rely on,

1st, The illegality of contract growing out of the attitude of the Confederate Government to the United States.

In equity, as between the parties, the general maxim of *pari delicto* does not always prevail—circumstances of the case often form the exception. Bellamy vs. Bellamy, 6 Fla., p. 103, and cases cited; Hughes vs. Orchard, 1 Wall., 72.

But we contend there was no illegal contract. The Confederate Government was a Government *de facto*—had belligerent rights. Prize cases, 2 Black, 666-7, and Wheaton's Int. Law, §23.

2d, That they are purchasers for value without notice alleging payment before bill filed.

This is not sufficient; it must have alleged that they had no notice before the execution of the title and payment of purchase money; if they had notice before either of these it is not sufficient. 2 leading cases in Equity, top pag. 45, Han & Wallace's Notes; Howlit's heirs vs. Thompson's heirs, 1 Widell, 369. Neither the deed nor the lease has

been executed.   But the record shows that both defendants had notice.

Suit pending in the county where the principal office of one defendant is established is constructive notice.   See contents of declaration.

The doctrine of *lis pendens* is a general notice of an equity to all the world: 2 Pier Williams, 482.

The answer is denied by the affidavit on file.

The Chancellor had the whole case on bill, affidavits and answers, before him, and gave the weight of evidence in favor of complainants, leaving the question for final decree on the evidence.

The 1st, 5th and 10th exceptions present substantially the same grounds of error for a reversal of the decretal order of the court below, and may be properly considered together.

1. Because the said order and decree is not based upon, or sustained by any of the allegations of the bill.

5. Because it is not sustained by any of the alleged equities of the bill.

10. Because it is not sustained by the principles of law and equity applicable to the case.

These exceptions go to the merits of the bill, and if well taken must necessarily settle the case.

The material parts of the bill necessary to consider, present the following case :

In 1864 the Pen. & Ga. R. R. Co., then owning the portion of the Road in controversy, having left it in an unfinished condition, entered into some agreement with the Confederate Government, by which said Government was to complete the road-bed, &c., and place thereon the iron. That complainants were placed on said Road by the Confederate Government, and employed to do everything necessary to place the road-bed and track, including culverts and bridges, in a fit condition to be used and operated.

That this was done with the knowledge and approbation of the Pen. & Ga. Co. That complainants did this work, and furnished the materials to the amount charged in the bill, of about $38,000. That they are professional Rail Road contractors and builders, and as such performed the work and furnished the materials used. That they were in possession of said Road, upon which they had expended their means and labor, and that the P. & G. R. R. Co. knew they were so possessed.

The bill specifically sets forth the nature, extent, amount and value of the labor performed and materials furnished.

The bill also alleges, that during the time they were performing this work and labor, a war was existing between the Confederate States and the United States, and that in 1865 the war ceased, and that complainants were in possession of said Road at the time, and had not surrendered their possession of their work, labor and materials, to the Confederate Government; and that the Confederate Government had never accepted or received said Road or paid complainants therefor ; and that complainants were never legally divested of their possession of the same.

Bill alleges that complainants-have a lien upon said road, for the work and labor thereon by them performed, and for the materials by them furnished therefor, and distinctly charges that they have a lien on each and every part of said Road therefor, and that it has never been lost or surrendered, and that they cannot be divested thereof, until the same is satisfied and paid.

It charges an illegal dispossession of complainants by defendants, and refusal to pay them, and that defendants had knowledge of complainants' lien.

It charges that defendants, one or both, have taken possession of their labor, work and materials, and are enjoying the same, and have not paid therefor, to complainants' injury.

It charges both defendants with endeavoring to defeat complainants' lien.

It charges insolvency of P. & G. R. R. Co., and alleges that they are remediless unless their lien is enforced.

It charges that defendants, one or both, but which is unknown to complainants, are now in possession of said Road, and using and operating the same to the detriment of their lien and value of the property.

It charges that a sale or an agreement of some kind has been entered into between defendants, by which the title of the road may be transferred to defeat lien.

It charges that suit was instituted by complainants against the Pen. & Ga. Co., and that the A. & G. Co. have taken the Road with notice of lien, &c.

Bill calls upon defendants for discovery as to certain allegations relative to the nature and character of the agreement between them touching the sale—consideration or transfer of said road, including time of payment, &c.; whether paid.

The allegations of the bill show then, that complainants have expended a large amount of capital in labor, work and materials upon the property of one of defendants, viz: the P. & G. R. R. Co., and that said company has the benefit, use and enjoyment thereof, and have paid nothing therefor; that this improvement was made with their knowledge and approbation.

The bill, therefore, shows that the P. & G. Co. are debtors for so much as the work and labor and materials are reasonably worth, and that the work, labor and materials were of that character which constitutes an equitable lien upon the road-bed and materials by them placed thereon.

The first question to ascertain is, are complainants creditors of the P. &. G. R. R. Co. ?

It is admitted by defendants' answer that the Confederate Government was to put the Road in running order and

6

have the use of it during the war, free of charge, and at the close of the war the Pen. & Ga. R. R. Co. were to have the privilege of purchasing the superstructure and improvements placed thereon from the Confederate Government. They were not, therefore, to have the benefit of the capital expended on the Road without making compensation.

The bill shows that the Confederate Government neither paid for the improvements, or had the use or benefit of them. The war closed before the Confederate Government used or operated the Road, and the P. & G. Co. took possession and have enjoyed the fruits of complainants' labor and capital.

Will not equity, then, substitute complainants to the rights the Confederate Government would have had, if it had continued a Government, and exact payment thereon?

The P. & G. Co. were, by the admission in the answer, previes to the contract with the Confederate Government and complainants.

In support of the proposition the following authorities are cited: Story Eq. Ju. 5, 388, 506, 513, 1232, 1234, 1236, 1238, 1218, 1219.

These authorities clearly establish the jurisdiction of this Court, and that as charged in the bill the P. & G. R. R. Co. are debtors to complainants, and that complainants have a lien which equity will enforce.

The P. & G. Co. have no right to complain; it is no worse for them to pay the complainants than to the Confederate Government.

But the Pen. & Ga. Co. seek to set up a breach of the understanding had with the Confederate Government as a bar.

The court properly disregarded this, for when a new equity is set up by the answer the court will not regard it on a motion to grant or dissolve an injunction. Young & Bryan vs. McCormick, 6 Fla., 170 and 369.

The equity set up by the answer of P. & G. Co. would not avail on the final hearing.

They show no effort to enforce their right, but acquiesce in the action of the Confederate Government, and permit their property to be improved by complainants.

If a true owner stands by and suffers improvements to be made on an estate, without notice of his title, he will not be permitted in equity to enrich himself by the loss of another. 2 Story, Eq. Ju., S. 1237—S. 799 b. and n. 3. See case of Putnam vs. Ritchie, 6 Paige, 390, 403, 404 and 405.

Complainants are skilled in their line of business, and are of the class recognized as to be entitled to lien upon the work for their compensation. They knew that an arrangement had been made for this work to be done by and between the Pensacola & Georgia Rail Road Co. and the Confederate Government, and complainants were employed to perform it. They are ignorant of said agreement and of its terms. They are not chargeable with the failure of the Confederate Government to carry out its terms. They have improved the property. The Confederate Government never used or derived any benefit from it, and the P. & G. Co. has. Why should they in equity and good conscience pay complainants ?

To hold that the Pen. & Ga. R. R. Co. is not responsible, would enable the perpetration of gross frauds upon mechanics and laborers, &c.

This cause came up on bill and answers, upon a motion for an injunction, notice thereof having been given.

The case was properly considered upon a full investigation of the merits as disclosed by the bill and answers by the Chancellor on the motion.

On an application for an injunction a chancellor may go into the merits as disclosed in the bill, and which are intrinsic and dependent upon its express allegations and charges. City of Apalachicola vs. Apalachicola Land Co., 9 Fla., 340.

We claim under this appeal that the appellants are restricted in their efforts to procure a reversal of the decretal order of the court below to the error assigned, which the appellees are at liberty to show (if they can) that upon the whole case no other decision could rightfully be made of the case in the appellate court.

That it is the duty of the court to consider the whole merits of the case, and if upon due consideration thereof, it should come to the conclusion that the decretal order of the court below is erroneous, it will proceed to pronounce such order as the court below should have done. Southern Life & Trust Co. vs. Cole, 4 Fla., 359.

These authorities are conclusive as to the duty of this court.

The bill and answer of the defendants, the Pen. & Ga. Co., clearly establishes a liability on the part of this defendant to compensate complainants, and as far as that defendant is concerned or affected by the order, it must be sustained.

The P. & G. Co. was privy to the contract for repairs to the road; were to pay what was the value at the close of the war; their property was to be improved with their knowledge and consent, upon the happening of an event to pay.

The breach of part performance by the Confederate Government, as set up in answer, would not exempt the P. & G. Co. from liability—they having accepted, used and derived benefit from it. 2 Story Eq. Ju., §1235 and 1236, and note 1.

Have not complainants in making these repairs and improvements, acted bona fide and innocently, and has there not been a substantial benefit conferred on the owner? If so, ought not the P. & G. Co. *ex æquo et bono*, to pay. Equity affords relief in such cases. 2 Story Eq. Ju., §1237.

It has been supposed that courts of equity do not grant relief in favor of a bona fide possessor making permanent

improvements by sustaining a bill brought by him therefor against the owner after he has secured the premises at *law.* 2 Story Eq. Ju., §1237, n. 4 and 1239.

Defendants have not recovered possession by law. We contend their possession is wrongful, and that we occupy the same position as if they had brought their bill to obtain possession. Ibid., and 1217, 18 and 20.

This was a lease for a term, stipulating to improve the property during the term, and for payment therefor at the termination of the lease by the lessor.

"A contract whereby the owner of land leases the same for a period of five years, and the lease stipulates to erect a building thereon during the first year of the term a building of the value of $3,000, the lessor covenanting in addition to the annual value of the premises (which is fixed at $300) to pay to the lessee when the building shall have been completed the sum of $1,500, although in one aspect an improvement lease, is *nevertheless, as to mechanics* and *material men,* a contract for the erection of the building, payable partly out of the profits of the land, and the estate of the lessor is bound by the mechanic's lien." Cited in 21 vol. U. S. Digest, Woodward vs. Leily, 36 Penn. State Reports, 437.

Under the authority of the case cited from 6 Florida, 363, South. Life Ins. & Trust Co. vs. Cole, we contend that an appeal in equity is substantially a re-hearing of the cause and opens up the whole case to the respondents in the court, while appellants are restricted to their assigned errors for a reversal of the decretal order. Appellants may assume a new ground for relief not specifically prayed for in the bill, and not asked for in the court below. It is, therefore, competent for this court to grant the injunction in the terms of the prayer, if the court thinks the equities of the bill should justify such order, or this court may modify or mould the order of the court below according to the rights

46                    SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

of the case made, and give such relief as equity and good conscience requires.

As has been stated by my associate counsel, appellants have abandoned by their assignment of errors, the following points made by answers, viz: 1, question of jurisdiction ; 2, the illegality of the contract; 3, nor the general demurrer for want of equity in the bill under statute.   Rules of court adopted 1852.

The answer of the P. & G. R. R. Co. admits that the Company did enter into a contract with the Confederate Government under which their road was to be repaired, &c., and that at the close of the war the company was to pay for them.

It does not deny that the work was done by complainants, but seeks to avoid liability by alleging breach by Confederate Government.

Does not show that complainants were ever notified by them of the breach,  or that the company ever, in any manner, attempted to prevent complainants from completing the work, but stood by and permitted them to improve their property.

It does not appear from answer but that complainants entered upon the road and performed a large portion of their work before breach of contract by Confederate Government.

The answer admits insolvency of Company.

Answer claims the property surrendered to them by U. S. Government.

The Government of the United States could not acquire any rights to the property except upon a decree of forfeiture and condemnation, which is not set up by answer—their possession was therefor tortuous.

*D. P. Holland* on the same side.

The appeal comes from the decretal order of the Hon. T. T. Long, sitting at Lake City at chambers in equity.   The

bill was filed in Suwannee Circuit Court, and by consent the answers were filed and the cause transferred to Columbia county, where at Lake City all further proceedings were had in the suit : the consent of the solicitors of both parties, complainants and defendants, in the court below, appears of record and further the order of the court thereon.

The bill was filed on the 3d day of April, 1867, in Suwannee county, and on the same day subpœna issued to defendants, and was served on the Atlantic & Gulf R. R. Co. by service on its agent on the 4th of April, and on the Pensacola & Georgia Railroad Co. by service on its President on the 5th.

On the 4th of April, A. D. 1867, a notice was served on the agent of the Atlantic & Gulf R. R. Co. at Live Oak, in Suwannee county, notifying the defendants that the complainants, on the 18th day of April, would apply to the Hon. Thos. T. Long, Judge of the Suwannee Circuit Court, at his chambers in Lake City, or as soon thereafter as counsel could be heard, for an injunction to issue according to the prayer in the bill filed in this cause, and a like notice was served on the Pensacola & Georgia R. R. Co., and on the 18th day of April, the motion of complainants for injunction was set for hearing on the 24th April, A. D. 1867, and in accordance with said consent the answers of the defendants were then filed.

The cause thus set for hearing came on to be heard on motion of complainants, that the writ of injunction do issue according to the prayer of the bill.

The decree shows that the motion was heard upon bill, answers and ex parte affidavits sustaining the statements in the bill and accompanying affidavit. And the complainants and defendants appearing by their respective solicitors, and having been fully heard after answers filed, the court thereupon made its decretal order :

DECREE.

1st, That the court had jurisdiction.

2d, That the bill of complainants exhibits equities that entitle the complainants to the interposition of the equitable jurisdiction of the court.

3d, The Pen. & Ga. R. R. Co. and the Atlantic & Gulf R. R. Co. are enjoined, until the further order of the court, from executing or in any wise carrying into effect the agreement relative to the Branch Road as exhibited by their answers. Further, they are enjoined from selling, leasing, or in any way disposing of said Branch Road, or encumbering the same in law or equity.

4th, Enjoining until the further order of the court the Atlantic & Gulf R. R. Co. from paying over to the Pen. & Ga. R. R. any sums of money growing out of the consideration upon which the aforesaid agreement, contract, or attempted sale or lease was made, and growing out of the capital stock of the Atlantic & Gulf R. R. Co. transferred to the Pensacola & Georgia R. R. Co. under the agreement.

5th, Enjoining until further order of the Court, the Atlantic & Gulf R. R. Co. from disposing of the incomes and earnings of said Branch Road, except in the payment of the necessary repairs of said road and expenses of running and operating said road, having due regard to economy.

6th, An order requiring the Atlantic & Gulf R. R. Co. to make a monthly report to the court, showing the gross amounts of its receipts on that portion of the Branch Road in controversy, and the amount expended for repairs and operating the same.

7th, Enjoining the Pensacola & Georgia R. R. Co. until further order of the court, from disposing of any moneys which they may receive for freight or passage money over that portion of the Branch Road.

8th, And that said company do make monthly reports of such receipts as may come to their hands under oath.

9th, Ordering the defendants, the Pen. & Ga. R. R. Co. & the Atlantic & Gulf R. R. Co., to appear before the Chancellor on the 10th day of May, 1867, to show cause, if any they have, why a Receiver should not be appointed in the cause.

The decree is made on the 3d day of May, A. D. 1867.

On the 9th day of May, 1867, the appellants by their solicitors entered their appeal to this court from said decree.

Herewith I give a statement of the case as presented by the bill and answers:

### STATEMENT OF THE CASE.

Complainants allege in their bill that the defendant, the P. & G. R. R. Co., by virtue of their charter under the laws of Florida, were authorized to build and construct certain railroads, and, among others, a certain branch railroad from the main track to the Georgia line, and had *partially erected* a superstructure for a branch railroad from a station on the P. &. G. R. R., known as Live Oak or Station No. 7, it being within the county of Suwannee and State of Florida, running thence through the counties of Suwannee and Hamilton, in the State of Florida, to the boundary line between the States of Georgia and Florida, where it was to connect with a branch road, the property of the defendants, the Atlantic and Gulf Railroad Company.

That the said branch road from Station 7 or Live Oak to the Florida line had been partially graded, but left in a very unfinished and incomplete manner, and being exposed to the weather from the time the work had been done, without due care having been taken thereof, the same had become washed and injured so that it required a great deal of labor and large expense and skill to place the same in a condition so that the "track" could be laid thereon.

The bill shows such was the condition of said branch road when the P. & G. R. R. Co. entered into *some* agreement,

50 SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

or terms, or contract with the Confederate States or military authorities thereof, whereby the C. S. military authorities, with the full knowledge of the P. & G. R. R. Co., placed Spratt & Callahan in possession of said branch road from Live Oak to the Georgia line, for the purpose of altering, improving, furnishing materials therefor, repairing the embankments, ditching cuts, and putting the road-bed in a fit and proper condition to receive the track.

That Spratt & Callahan are railroad contractors and builders, and that they did contract with the Confederate States to repair said road from Live Oak to the Georgia line, and to furnish all the materials and labor, and to build and put the same in *complete* working and running order, saving and excepting the iron.

That, in April, 1864, they were placed in the possession of said branch road by one Minor Merriweather, Major of Engineers of the C. S., and Commissioner on its behalf for the purposes aforesaid; and that said Minor Merriweather and the C. S. were fully authorized and empowered so to do by the Pensacola & Georgia Railroad Company, by virtue of an agreement or contract between said railroad company and the C. S. and its authorities.

That the P. & G. R. R. Company did know of Spratt & Callahan being engaged in the work and labor aforesaid; that when they went into possession for the purposes aforesaid, to-wit, in April, 1864, they found the road in the dilapidated and incomplete condition above described.

That they expended thereon, in the employment of laborers, tools, vehicles, animals, provisions and materials, and employed great skill in the improving of, creating and erecting said branch road, large sums of money, amounting, in the aggregate value, to be $37,379.60-100, in the currency of the United States—the aggregate sum consisting of the following items:

| | | |
|---|---|---:|
| Repairing 22½ miles of Road-Bed, - - | - | $ 3,375 00 |
| 27,724 Cross-Ties, at 40 cents each, | - - | 11,089 60 |
| Laying and Embedding Cross-Ties 22 miles, at | | |
| $300 per mile, - - - - - | - | 6,600 00 |
| Howes' Patent Bridge across the Suwannee | | |
| river, 174 feet, at $60 per foot, - - | - | 10,440 00 |
| 2 Abutments therefor, - - - - | - | 4,500 00 |
| Trestle Bridges over the Alapaha and Tiger | | |
| Creeks, 275 feet, at $5.00 per foot, | - - | 1,375 00 |
| This being the aggregate, - - . | - | $37,379 60 |

That when they were employed and put in possession of said branch road, and while they were constructing the same, a war was existing between the Confederate States and the United States, and that in the year 1865 the Confederate States ceased to exist; that at the time of the surrender of the Confederate States, your orators were in possession of the branch road; that Spratt & Callahan never surrendered the said possession to the Confederate States or its agents, or to any person, and never received pay for the work and items aforesaid.

Spratt & Callahan charge that they have a lien for their work and labor and materials on every portion of said branch railroad by them improved, erected and completed as aforesaid; that said lien has never been lost or surrendered by them, and that the defendants and all other persons are bound by the same, and cannot divest complainants of the same until their full charge is paid.

That the Pensacola & Georgia Railroad Company, in violation of complainants' rights and lien aforesaid, and against their consent, deprived them of the possession of said road, and refuse to pay said claim or any part thereof, and have appropriated to their *own use and benefit* the skill, labor, &c., of complainants, expended on the improvement and erection

of said branch road, in violation of equity and good con-
science, and to their great wrong and injury.

They state on information, which they believe, that the
P. & G. R. R. Co., *since* they illegally and unlawfully de-
prived your orators of possession of said road, have sold or
leased the said branch road to the defendant, the Atlantic
& Gulf R. R. Co., for an immense sum of money, and have
delivered over the possession of the road, together with the
work and labor and materials of complainants, to the said
A. & G. R. R. Co., and that now, at the time of the filing
of the bill, said P. & G. R. R. Co. and the A. &. G. R. R.
Co., or *either or both*, are in possession of the branch road,
and running and using the same to the *great injury* of
complainants, and in violation of their rights.

That complainants cannot state which of the two com-
panies are at this time the true owners of said branch road.

That each of the Presidents of said railroad companies,
and *both, knew* that complainants had never surrendered or
delivered the possession of said road to the Confederate
States or to any person, and *that they never had been paid*
for their work and labor; and although the defendants had
such knowledge, they have wrongfully deprived complain-
ants of the possession and refuse to pay their just claims,
and that they are jointly and severally trying to defeat
complainants of their just dues and destroy their lien afore-
said; and that the defendants, by some agreement between
them, *unknown* to complainants, now running and using
said road, *to the detriment*, in value of the same, and *to the*
*injury of the lien and claim and debts* of complainants.

They charge that the P. & G. R. R. Co. is insolvent,
and that there are numerous liens on main line of the com-
pany; that unless their claims and debt can be enforced
on the branch railroad, which was improved, partly erected
and completed by their skill and labor and materials, they

are without remedy, owing to the prior liens on general property of the P. & G. R. R. Co.

Complainants allege that it would be against equity and good conscience to deprive them of their lien on said road and to permit the Atlantic & Gulf Rail Road Company to pay the Pensacola & Georgia Rail Road Company whatever sum of money which may have been agreed upon between said companies for the transfer of said Branch Road to the A. & G. R. R. Co., without first requiring the just and equitable claim of complainants to be paid, or to permit the said companies or either of them to use said road and wear out the same to their injury.

That in October, 1866, complainants instituted suit in Leon Circuit Court against the Pensacola & Georgia Rail Road Company for the value of their work and labor aforesaid; that the common law suit was defended by said company who appeared by their attorneys, and is still pending, having been continued at the Spring Term, A. D. 1867, of said court to the Fall Term thereof.

Complainants further show that *since the commencement of said suit* and the service of the process on the Pen. & Ga. R. R. Co., the said company have attempted to defeat the lien of complainants and make the judgment of the Leon Circuit Court valueless, by divesting themselves of the possession and obtaining from said A. & G. R. R. Co. the full value thereof, so that complainants allege and charge they are without remedy at law; that after judgment at law was obtained in the Middle Circuit of Florida, the execution issued thereon could not be satisfied without the aid of the equity jurisdiction of *this* court to enforce the lien aforesaid on the Branch Road, as the subject matter or property lies in the jurisdiction of this court, and as before judgment could be obtained the defendants (the two Rail Road Companies) by confederating and wrongfully depriving complainants of the possession, and by continued use of the

54 SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

same will have so injured the Branch Road as to decrease its value; and further, that the Atlantic & Gulf Railroad Company will then be the owner of said Rail Road, *and the same not liable to the judgment aforesaid* without the assistance of the chancery jurisdiction of the Suwannee Circuit Court.

Complainants charge that the judgment could not be satisfied by the general property of the Pensacola & Georgia Rail Road Company for the reasons aforesaid of prior liens and mortgages, and indebtedness against said company now existing.

They further charge that the Atlantic & Gulf Rail Road Company did, prior to said sale or lease from the Pensacola and Georgia Railroad Company of said Branch Road, have notice of the existence of said suit, and in full knowledge of the same entered into said sale or agreement, and thereby took the said Rail Road subject to the liens of your orators.

The bill calls upon the Pensacola & Georgia Rail Road Company to make discovery by answering :

1st, Whether it was not possessed of the franchise of the said Branch Rail Road.

2d, Whether the Pensacola & Georgia Rail Road Company have disposed of said franchise or leased the same, and if so, when, to whom, and upon what consideration, and that they annex to their answer a correct copy of the instrument or lease, or conveyance or agreement of the same between them and any other party relative to said Branch Road.

3d, That the said Pensacola & Georgia Rail Road Company answer fully and particularly whether they have received the consideration, and if not, when the same is to be paid, and of what it is to consist—whether money, stock, bonds or obligations of any corporation or person, and that they set forth the obligations, if such there be, that form the consideration.

4th, That the Atlantic & Gulf Rail Road Company answer whether they are now in the possession and using. the said Branch Rail Road from the Georgia Line to Live Oak, in Suwannee county, and if yea, when they went into the possession or took control thereof or used the same, and that they set forth the conveyance or instrument or agreement entered into between them and any corporate company or person, whereby they obtained such right, and that they give particularly the kind and character of the consideration which they have paid or which remains unpaid, and the dates thereof.

The prayers of the bill are :

1st, That at the final hearing of the cause a decree may be granted for a sale of the said Branch Road to satisfy the claim and lien of complainants.

2d, That some suitable person be appointed to ascertain and report to this court what sums of money may be found to be due and owing by the defendants to the complainants.

3d, A prayer for general relief.

4th, For a writ of injunction issuing out of and under the seal of this Honorable Court, to be directed unto the said "The Pensacola & Georgia Railroad Company" and "The Atlantic & Gulf Rail Road Company," restraining them, their servants, workmen and agents, from running, using or running locomotives and cars over said Branch Road or any part thereof, or committing any waste thereon or in any way, manner or form using the said Branch Road from Live Oak Station to the Georgia & Florida boundary line, until the further order of this court.

5th, A prayer for the writ of subpœna to the defendants.

The facts of the bill are verified under affidavit, and that complainants are "unable to give bond of indemnity or other security."

This bill was filed in Suwannee Circuit Court April 3d,

1867, and on the same day subpœnas were issued against the defendants.

The subpœna to the Pensacola & Georgia Railroad Company bears the following return:

"Executed the within subpœna in Chancery, by handing a true copy thereof to Edward Houstoun, President of the Pensacola & Georgia Railroad Company, this 5th of April, A. D. 1867.

R. SAUNDERS, Sheriff,<br>By G. C. TOWNSEND, D. S."

It bears the following endorsements of the Sheriffs:

"Came to hand April 3d, 1867.

W. D. GREENE, Sheriff."

"Came to hand April 5th, 1867.

R. SAUNDERS,<br>Sheriff of Leon county."

The subpœna to the Atlantic & Gulf Railroad Company bears the following return:

"Executed the within subpœna by serving a true copy of this subpœna on E. F. Henderson, the Agent of the Atlantic & Gulf Railroad Company, at the office of said company and agent, at Live Oak, in Suwannee county, this 4th day of April, 1867.

W. D. GREENE,<br>Sheriff of Suwannee county."

Notice was served in like manner to the defendant,s respectively, to appear at Lake City on the 18th of April, at the Chambers of his Honor T. T. Long, Judge, to show cause, if any they could, why an injunction should not be granted according to the prayer in complainants' bill.

On the 18th day of April, the following consent rule was read and taken in open court at the Spring Term of Columbia county:

"It is agreed between the Counsel and Solicitors of the complainants, and of the defendants, 'That the hearing of

the motion of complainants for injunction be set for hearing before his Honor Thos. T. Long, Judge, at his Chambers at Lake City, on next Wednesday, the 24th of April, at 10 o'clock, A. M.'

"It is further agreed, 'That the separate answers of the defendants shall be filed by his Honor Judge Long, and the same shall have like effect as if filed in the Clerk's office of Suwannee Circuit Court by the Clerk thereof.'

D. P. HOLLAND,

Solicitor for Complainants.

LAW, LOVELL & FALLIGANT,

Solicitors for A. & G. R. R. Co.

PAPY & WESTCOTT,

Solicitors for P. & G. R. R. Co."

Thereupon, the separate answer of the Pensacola & Georgia Railroad Company was filed on the 18th day of April, A. D. 1867. And the separate answer of the Atlantic & Gulf Railroad Company was filed at the same time. And the motion for the granting of the injunction set for hearing on the 24th inst., at 10 A. M.

The separate answer of "The Pensacola & Georgia Railroad Company" insists that—

1st. That there is no equity in the bill.

2d. That this Court has no jurisdiction to grant the prayer thereof—and that the defendant is not bound to answer the same—and insisting on the special matters set forth, and have the same benefit thereof as if it had pleaded the same or had demurred to said bill.

Yet, nevertheless, the answer says: That by virtue of their charter and amendments, this defendant was authorized and empowered to construct said branch road. That it had proceeded to construct said branch road, and had fully graded and trestled the same, and prepared it for laying the iron rails thereon, when, owing to the war then

8

58                    SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

existing between " the United States and the so-called Con-
federate States," the work was arrested just at the point
where the laying of the track would have commenced.

That it incurred and paid the whole cost and value neces-
sary before the iron rails were laid, including a large num-
ber of cross-ties, which were distributed along the line of
said branch road, ready to be used whenever the iron rails
could be procured.

That during the war, it sought to obtain the iron.

" That during the continuance of the war it sought in
various ways to complete the said branch road, for the
grading and trestling of which, as already stated, it had
expended the full value, but failed, because it was unable
to procure the iron rails."

That during the war it became the adopted policy of the
C. S. to seize upon such roads as it deemed necessary for
military purposes, and to facilitate its operations in carry-
ing on the war then waging with the United States, and in
some instances taking up the iron rails from one road and
placing them upon another.

That this policy was adopted with respect to the branch
road, and it was informed by the agent of the C. S. that
such was its purpose, and its expectation, and design, to lay
the iron rails thereon by the C. S. at its own expense, and
to use the road for its own benefit, except so far as by the
constitution and the laws compensation was required to be
made to defendant.

That it was the design of the agent of the Confederate
States to avoid, if they could, the payment of compensation
as required in all cases of seizure or impressment, and to
that end various propositions and terms were made and
offered, " and finally it was agreed that the Confederate
States should have the use of the road-way on said branch
road, together with such cross-ties as this defendant had
provided for that purpose, free of any charge, owing to the

war, at the conclusion of which this defendant was to have the privilege of purchasing the superstructure laid by the Confederate States upon said road-way, and bridges, &c., &c., and if the parties could come to no terms as to price, the Confederate States was to have the right to remove the same."

The answer next alleges a certain agreement entered into through the attorney and agent of the C. S. with the Florida Railroad Co., relative to taking so much iron, and chairs, and spikes, from the Florida Railroad, and completing the branch road, and after the establishment of peace, providing for the same to be replaced on the Florida Railroad at the cost of the C. S., and they file as exhibit "A" a copy of said agreement, which is made a part of the answer. And that as soon as it was informed of the said agreement, which was a few days thereafter, it objected thereto, and at once informed the agent and attorney of the C. S. of "its opposition to the same, as conflicting with the agreement entered into with this defendant," and that if the Confederate States proceeded thereunder, it would regard it as in violation of its right under the agreement made with it, and protested against the taking possession of the branch road.

That the C. S. by its agent, proposed another agreement with defendant, but it was refused.

That notwithstanding the protest of this defendant as aforesaid, and notwithstanding the violation of the contract made with it as aforesaid, the said Confederate States and its agents proceeded to use the branch road aforesaid, and to retain the possession thereof; and did lay down on the track the iron it had obtained from the Florida Railroad Company under the agreement aforesaid. That although this defendant was not bound longer by said agreement, it had no means to "regain the possession of said road, which had been taken and then was in possession of the C. S."

The answer next alleges that the complainants were well

60　　　　　SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

advised of the policy of seizure and impressment that had been adopted by the C. S.

That in all such cases and "where the use of property was permitted to the Confederate government, all expenses and cost of repair or completion were borne by the C. S. without liability on the part of the owner, and without expectation on the part of contractors, workmen or others, that any person other than the C. S. was liable for or would pay for work performed or materials furnished."

That in this case the defendant had no authority or power to prevent the complainants from executing the contract they had made with the Confederate States through their agent with respect to this branch, and if it had attempted it the complainants would not have heeded it.

That the complainants looked only to the C. S. for pay for work performed and materials furnished by them on said branch road; that the same was provided for by contract between them as to mode and amount; that the continuing in the possession of said branch road was in violation of the rights of defendant, and not in conformity to the contract it had agreed to.

The answer next says that there was no responsibility from defendants to complainants in any form, and denies that the failure of the C. S. to pay the complainants gives them any right in law or equity to assert and maintain their claim against defendant.

That on their contract they gave credit to the C. S. with the full knowledge that at the end of the war the road, whether held under the contract with defendant or against it, and notwithstanding the protest as aforesaid, would come back and be received by defendant, without any responsibility in law or equity for any obligation which might have been incurred by the C. S.

That complainants in fact and in law assumed all the risks of being paid by the C. S., and did not suppose or act

on the supposition that defendant was liable to them, or that there existed a lien on said branch road against defendant; and denies that the possession of said branch road was delivered to complainants by the C. S.; and denies positively that it had knowledge of any such possession being delivered to them; and says it is not customary to deliver possession of road to contractor, whose work is limited to something short of complete construction, and especially was it not necessary in this case, because the defendant had completed the grading and trestling.

That the C. S. had no lawful authority to deliver possession to complainants or to any person, so as to impair or defeat the right of this defendant to the possession of said road at the end of the war, or in any way to prevent it from discharging its duty to the public by operating said road according to the requirements of its charter.

That before the end of the war, and before the surrender of the C. S. and its armies, the said C. S. were, in fact, in the complete occupancy and possession of the branch road, and had run their own trains of cars over the same, without objection, murmur or dissent from complainants or either of them, so far as defendant ever heard, and without the assertion of a right on their behalf to interpose.

That upon the surrender, the United States authorities took possession of said branch road as captured property, liable to confiscation, and retained possession for some two months or more, when the road and this branch were turned over to defendant. It therefore denies that it took possession of said road and deprived the complainants thereof; but asserts "that complainants never had legal possession, (or actual possession, so far as was necessary to enable them to perform their contract with the Confederate States.")

That defendant did not, in fact, deprive complainants of the possession, but in fact received the same from the authorities of the United States, without the remotest idea

at the time, that it was or would be considered by complainants liable to pay what they had agreed to take from the C. S., and from whom alone they expected payment.

That the United States, on the application of the Florida Railroad Company, authorized the removal of the iron that had been placed on the branch Road, the Florida Railroad Company being entitled to the same under its contract with the C. S., and that the defendant offered no objection, but facilitated the tearing up and removal of the rails from the branch road.

That upon the surrender of the C. S., it had the legal right to enter upon and take possession of its said branch, without responsibility to complainants for whatever work might have been done while in possession of the C. S.; that the possession was transferred by the United States to defendant, the same having been in actual occupancy by the C. S.

That there was no lien, express or implied, in favor of complainants, nor did the C. S., or its agents, or officers, have the legal right to create a lien in favor of the complainants; [and defendant denies that it had any notice of such pretended lien until the filing of the bill.

Defendant answers—that on the termination of the war, its means being crippled, and its resources curtailed for want of means, it concluded to dispose of said branch road to the Atlantic & Gulf Railroad Company, so as to complete the connection at an early day between the main lines of road in Georgia and Florida, and thus secure to the public the benefits intended by the law. That the defendant in last July concluded an agreement with said Atlantic & Gulf Railroad Company for the sale or lease of said branch road, which has been consummated so far as to deliver said branch road to said Atlantic & Gulf Railroad Company, and annex the agreement as exhibit "B," and make it a part of the answer.

That at the time of making the agreement the defendant

had no notice of the alleged lien of the defendant, and never imagined that any legal claim existed against it for said work or materials, and therefore denies that it had attempted to defeat the said pretended lien by the transfer of the branch road, or that the same does, in fact, affect any legal claim which complainants have against it.

The answer denies that the running or operating of the branch road by the defendants in any wise impairs or affects injuriously the pretended claim of complainants. And as the road has been graded and trestled at the cost of defendant, before the C. S. got possession thereof, and as to the road bed so as aforesaid constructed, there exists no shadow of pretense of a lien.

That the iron was procured and laid on the track at the cost and expense of the Atlantic & Gulf Railroad, and as to that there is no pretense of lien.

That if there is any lien or claim existing against the defendant, no injury or damage can arise to complainants by the continued operations of said branch road, but great damage would result to the said Atlantic & Gulf Railroad, and great inconvenience to the public, without any benefit to the complainants, if the running of the road were to be enjoined.

Answer insists that the pendency of the suit in Leon Circuit Court is in abatement of these proceedings, and that the same should be dismissed.

That the value received by it for the branch road did not exceed, if indeed it reached, the actual cost to the defendant of the branch road.

That the defendant knows nothing of the pretended claims of complainants, or wether they did or did not receive any compensation from the C. S., except what they derive from the allegations and statements of complainants, and insist that full proof should be required of them; but in no event

64 SUPREME COURT.

.P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

does it admit that in law or equity it is responsible for the same.

And for further answer—"That the office of this defendant, and the residence of its President, is in Leon county, in the Middle Circuit of Florida; that the larger part of said branch road lies in the Middle Circuit aforesaid; that this defendant is by law suable only in the county of Leon aforesaid, and that the jurisdiction of the Circuit Court of the Middle Circuit is ample for all the purposes set forth in the complainants' bill of complaint; defendant therefore insists upon its right secured by the laws of this State, and insists upon the facts aforesaid, by way of plea to the further maintainance of this suit."

That the complainants at the time, or shortly after, of the agreement for the sale or lease of the said branch road to the Atlantic & Gulf Rail Road Company, that they should have asserted their claim to be enforced by a sale of Road before the Atlantic & Gulf Rail Road Company incurred the expense of purchasing the iron rails and laying them down on the track and before the transfer was fully consummated.

That neither of the defendants had any knowledge of the pretended lien or that such lien would be asserted, and that the failure to assert their lien should stop them from doing so now.

That their standing by and suffering said transfer to be made and the expense of buying and laying down the iron on said Branch Road to be incurred without asserting their lien, and to permit it now to be maintained would operate as a fraud upon the rights of both the defendants.

That the running and operating of said road is a public benefit and in compliance with the law.

That the using of the road necessitates its being kept in good order and repair, which would not be the case if left without supervision and unattended to. That it would be in a better condition to respond to any decree complainants

may obtain by its use than by stopping its operations. That the injunction is not necessary to protect any right of complainants; that an injunction ought not and cannot rightfully be granted in this case.

That Daniel Callahan, one of the complainants, in 1866, and not long before the agreement with the Atlantic & Gulf Railroad Company was made with one Sims, sought to make an arrangement with both the defendants by which they should become possessed of the said Live Oak connection, embracing that part in Georgia as well as the part in Florida, but the terms proposed were not accepted. That during the negotiations no suggestion was made by Callahan of the pretended claim asserted by complainants, and no intimation of the said pretended lien was made or notice thereof was given to defendant, and that the complainants should now be stopped from asserting the same.

And lastly, that by the agreement with the Atlantic & Gulf Railroad Company, it was to receive for said branch road the actual cost of the same in stock of said A. & G. R. R. Co. at par. That the said consideration has been received by this defendant and the same has been disposed of by it.

And on the same day, to-wit: on the 18th day of April, 1867, was filed the separate answer of the Atlantic & Gulf Railroad Company.

The answer admits that the Pensacola & Georgia R. R. Co. was authorized by its charter to construct the branch road as alleged.

That defendant knows nothing of the condition of said branch road when complainants took possession under said alleged contract with the C. S., and prays strict proof thereof.

That it knows nothing of any contract or agreement between the Pensacola & Georgia R. R. Co. and the C. S.,

9

whereby the complainants were placed in possession for the purposes alleged.

That it knows nothing of any contract between the complainants · and the C. S. in regard to the work, and labor, and material on said branch road, and prays strict proof thereof.

And avers, that if any such contract was made as alleged in complainants' bill, "that such contract was made for the purpose of aiding and assisting the said Confederate States in carrying on war, and in their rebellion against the government of the United States, and therefore was and is illegal and void *ab initio*, and cannot be enforced by this court; and that such contract being contrary to law and illegal, the said complainants ought not to have and cannot have a lien upon the said branch road for the payment of the amount they claim to be due them thereon, if such amount is due thereon from said late Confederate States."

That it appears from complainants' bill "that the work, labor and materials which they expended upon and furnished to said branch road were so done and furnished under a contract between them and Minor Merriweather, a Major of Engineers in the military service of the Confederate States of America, acting for said Confederate States in carrying on war against the United States Government and for no other purpose, as this defendant avers and alleges, and that by the laws of the United States such contract was and is void and illegal and of no force, and cannot and should not be enforced in any court."

The defendant knows nothing of the labor and materials laid out by complainants on said branch road, and prays they may be held to strict proof thereof.

That by complainants' bill it appears, that they went into the possession solely under the authority of the late Confederate States, and were solely employed by the C. S., and avers that neither of the defendants were parties to said act

of possession.  That the contract was made by complainants solely with the late Confederate States and not with either of defendants.  That the possession was received by complainants for an unlawful purpose; that the complainants never were in lawful possession, and all such right, if any such right they ever had, ceased and ended with the power and existence of said late Confederate States.

That complainants never did acquire any lawful lien upon said branch road.

That the defendant is informed, and believes and avers, that on or about June, 1865, the said branch road was left by said complainants to the possession of the forces of the army of the United States, and was entirely abandoned by said complainants, and so remained until on or about the month of September, 1865, when the Pensacola & Georgia R. R. Co. re-took possession of the branch road as its own property, abandoned by the late Confederate States, and all persons claiming under it, and at that time the said branch road was not in either the actual or constructive possession of complainants, and it was daily coming to loss and detriment and daily becoming impaired in value.

That it entered into a contract with the Pensacola & Georgia Railroad Co. for the lease of said road for ninety-nine years, and is now in possession and running its cars over the same under said contract.  That possession commenced on the 17th day of July, 1866, the date of the contract.

That the defendant has paid the Pensacola & Georgia R. R. Co. in part consideration for said lease, the sum of $134,-000 in the capital stock of this company.

That no lease or deed has yet been executed between this defendant and the Pensacola & Georgia Railroad Company, but claims to hold the branch road under said contract, which is annexed and made a part of the answer.

That since it went into possession under the contract it

has expended upon said road, in work and materials, more than $220,000—has increased the value of the road to that extent, and its responsibility to answer to complainants for any lien they may have thereon for the payment of their claim of $37,379 60-100 as is alleged in their bill.

It denies that the use of the road by defendant will impair its value, but avers that while the trains of defendant are running over said branch road and carrying mails of the United States, passengers and freight, it is necessary for defendant to keep the same in good running order and repair, and thus keep up and sustain the security to complainants for the payment of any lien they may have or judgment or decree they may obtain against said branch road. That if injunction is granted, it would weaken the security to complainants as it would not be necessary for it to keep said road in repair, and denies that the use of the road by defendant can in any way decrease its value ; that there will not be ample and sufficient property therein to respond or pay any judgment or decree which complainants may obtain for their aforesaid claim.

That neither of defendants ought to be bound to pay to complainants, if in the judgment of this court the defendants or either of them, are under any obligation to make payment therefor, to a greater amount than the actual value of said labor, work and materials, when the Pensacola & Georgia Railroad Company took possession of the same, and that they should in no wise be held for the original cost, but only for the actual value as it came into the possession of defendants.

And upon information and belief the complainants have been paid by the Confederate States large amounts of money for work, labor and materials, which they allege to have laid out and expended on said branch road.

And it denies that any lease or conveyance by the said Pensacola & Georgia R. R. Co. of said branch road to de-

fendant can, or would in any way impair or injure any lien which complainants may have for their alleged work, labor and materials, and that the said lien, if any such there be, could as well be enforced by this court, whether such lease was made or not.

That if they have any such lien, they are debarred from enforcing the same against this defendant now in possession of said branch road for value and without notice of said lien, because the complainants stood by and permitted this defendant to purchase their said interest in said branch road without informing defendants, complainants held or claimed any lien, the complainants at the time well knowing that the defendant was purchasing for value.

The answer is sworn to by W. Duncan, acting President A. & G. R. R.

This cause was by consent of counsel by order of the Judge, transferred from Suwannee county to Columbia county, in equity, April 25th, 1867.

The first question presented by the answer is the plea to the jurisdiction of the court presented by the Pensacola & Georgia R. R. Co., alleging that the Leon Circuit Court has jurisdiction, because the residence of the President and the office of that Company is in Leon county, and the greater part of said branch road lies in the Middle Circuit. That defendant is by law sueable only in the county of Leon, and that the jurisdiction of the Circuit Court for the Middle Circuit is ample for all the purposes set forth in complainants' bill.

It is contended on behalf of complainants that this court has jurisdiction, and that it is the proper circuit wherein the same should be brought, to-wit: in the Suwannee Circuit Court in equity.

The defendant, the P. & G. R. R. Co., insist that under and by statute of this State, Sec. 3, Thomp. Digest, page 328, the suit should have been commenced in Leon Circuit

Court. We contend that said statute has no application to this case for the following reasons:

1st. That this is a court of general equity jurisdiction.

2d. The defendant, the Atlantic & Gulf Railroad Company is a foreign corporation, whose agent and office is in Suwannee county, therein residing and having the office of said Company, as alleged in the bill of complainants, and sworn in the return of the Sheriff upon the subpœna in Suwannee county.

3d. The result of the plea, if sustained, would be to require two causes in equity to be brought—one in the Leon Circuit against the Pensacola & Georgia R. R. Co., and one in the Suwannee Circuit against the Atlantic & Gulf R. R. Co., thus multiplying suits about the same subject matter.

The position of the defendant, the P. & G. R. R. Co., might be well taken if it was the *sole* defendant.

The plea sets forth facts which constitute only a question of privilege in the P. & G. R. R. Co. to be sued in Leon Circuit Court.—See Russ, adm'r of Gorrie, vs. Mitchell, XI Florida Reports, 80.

But in case of several defendants, as in the case at bar, the plea will not hold good.

Story in his Equity Pleadings, Sec. 715, says: "When the suit is brought in a superior court of general equity jurisdiction, nothing will be intended to be out of its jurisdiction except what is shown to be."

And again he says, speaking of the plea—"In point of substance it is necessary to entitle the particular jurisdiction to exclusive cognizance of the suit, that it should be able to give a complete remedy."

And the same author, at page 727, § 715, lays down the rule which complainants hold decides this plea of the P. & G. R. R. Co. to be bad, in the following words: "And if a suit is instituted against different persons, some of whom have privilege and some not, or if one defendant is not amenable

to the particular jurisdiction, a plea will not hold."—Citing Mitf. Eq. Pl., 224, 225.' And the same is laid down to be the practice in 3 Daniels' Chancery Pl. and Prac., 653.

This court has jurisdiction of the defendant, the Atlantic & Gulf R. R. Company, and it is liable to be sued in Su-wannee Circuit Court by virtue of the statute approved Feb. 12th, 1861.—See Chapter 1,116, page 63, pamphlet laws, 1860-'61, and by act Nov. 21st, 1829; see Thompson's Digest, page 328.

The return of the Sheriff is made on said A. & G. R. R. Co. by virtue of said acts and in conformity to act 1834, Thomp. Digest, page 329.

No question can be raised by defendants after appearing by counsel and filing answers as to any irregularties.

The appellees hold—

1st. That the appellants are by the rule of this court not allowed in argument to insist upon any matters except such as are set forth in the petition for appeal.—Rules of court adopted in 1852. Hence the plea to the jurisdiction in the answer of the P. & G. R. R. Co. is not before the court— nor the illegality of the contract with the C. S.—nor the general demurrer, on the ground of no equity in the bill set forth in the answer under the statute of Florida is not before this court, but that they are confined to the answers and bill under their exceptions.

2d. That this appeal is substantially a rehearing of the cause, and the appeal opens the whole cause to the respondent.—Southern Life Insurance Co. vs. Cole, IV Fla., 359.

3d. That this court will grant such decree as the court below ought to have granted, if the court believes the decretal orders of the court below are not adapted to the cause as it appears of record, and by the decree of this court will decide the equities between the parties and grant fitting decree.—See the cases cited by Justice Thompson, page 363,

72 SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

in IV Fla.; Southern Life Ins. and Tr. Co. et al. vs. Cole; Thompson's Digest, 449.

4th. That the facts of this case as appear by the record of the cause, do warrant the decretal orders of the court below.

5th. That the Atlantic & Gulf Railroad Company are not purchasers for valuable consideration.

Hare & Wallace's Notes, leading Cases in Equity, 2 vol., part 1, page 45.

I. I propose to take up the 7th, 8th and 9th exceptions first, which are—

7th. Because it was not embraced in the notice to show cause given to defendants.

8th. Because no motion therefor was made and notice given to defendants.

9th. Because the subject matter thereof was not presented in the argument made in the court below, and no opportunity was allowed the defendants to show cause against the same, the same being granted after answer filed without notice.

This court will presume that all was done in the court below that was required to be done, in accordance with the practice and usage of courts of equity, until the contrary appears.

Appellants in these exceptions set forth surprise as a ground of reversal prayed; was there any such surprise?

Notice had been served on the defendants to appear and show cause why an injunction should not issue according to the prayer in the bill. How do they respond to that notice? They file their answers; they deny that complainants have any equity; they set up a new equity, which they say exists, to defeat the complainants; they disclose an agreement under which title is claimed as a purchaser for valuable consideration, without notice so as to defeat complainants; they, by their answers, bring up the whole merits of the cause; they put the whole cause at issue; they disclose a cause

which we say makes out our claim to the interposition of this court; they, by their own course in putting in the answers, require the court to hear all the equities in the same. They do all this. They appear and argue the whole cause fully by solicitors for both defendants, as is shown of record by the decree of the court, on a motion that injunction do issue according to the prayer in the bill.

What was that prayer? For an injunction to issue restraining them, their servants, &c., from running, using or removing locomotives and cars over said branch, or any part thereof, or in any way or manner using the branch road, until the further order of the court.

This prayer for an injunction they resisted by their answers, and because the court, by its decree, modified the relief prayed for specially, by permitting them to continue to use the road, and to report to him the receipts and expenditures, and forbid the Florida corporation, that, by its own admission, was insolvent, to turn over the proceeds of this road to a foreign corporation and allow it to go beyond its jurisdiction. In a word, because the court in that part of its decree allowed them to use the road until his further order, under such terms as the court imposed, instead of restraining them from using the road in any way. They say this was surprise; we had no notice. This is to say the *major* does not include the *minor*.

Is it surprise that the court allowed the continued use of the road on terms until his further order, instead of preventing the defendants from in any way using the same.

Was it surprise that the court decided that it had jurisdiction when they themselves do not even call its decision into question, or their appeal as to that point?

Was it surprise that the court enjoined the execution of the agreement which was disclosed by them, for the first time, upon the discovery prayed for in complainants' bill,

10

and when disclosed by them, on it they relied to destroy the equity of the complainants' bill, and which instrument was a fraud upon and hindrance to complainants' rights, and was in violation of law ?

Was it surprise to prevent them from fully completing an illegal act partially performed and claimed as a title ?

Most assuredly they could not have been surprised to their injury by that part of the decree which ordered them to show cause why a Receiver should not be appointed, because they appealed and obtained a supersedeas before the time came for them to show cause, hence that part of the decree has never been determined.

The 9th objection this court will not nor cannot inquire into ; it would simply raise a question of veracity; if it is to be enquired into we say—the court must have evidence as to what constituted the questions of argument below.

We say the motion was made at the bar to get the court, if it refused the specific injunction prayed for, to grant the order and decree made.

II. I now propose to consider the 2d, 3d and 4th grounds relied upon by the appellants, to wit:

" 2d, Because the same is not supported by any prayer in the bill.

" 3d, Because it is not embraced in any prayer of the bill.

" 4th, Because it is not warranted by the relief prayed."

The prayers of the bill are:

1st, A decree at the final hearing of the cause for sale of that portion of the branch road (which is the subject of the suit) to satisfy the claim and lien of complainants.

2d, For account.

3d, A prayer for general relief, or rather in the words of the prayer, " such further or other relief in the premises as the nature and circumstances of this case may require and to your Honor shall seem meet."

4th, A prayer for injunction "restraining them, their servants, workmen and agents from running, using or running locomotives and cars over said branch road, or any part thereof, or committing any waste thereon, or in any way, manner or form using the said branch road from Live Oak Station to the Georgia and Florida boundary line, until the further order of this court."

5th, A prayer for process to issue against defendants.

The decretal order of the court did not grant the injunction specially prayed for, except in this, where it enjoins the defendant from executing and perfecting the agreement set forth in their answers, in this respect it does grant that part of the prayer for injunction which prays that they be enjoined "from *in any way, manner or form using the said branch road.*" By the answers they show they have contracted as to its sale or lease; both parties insist that one has the right *to use the road*, not simply to run it, but to sell or lease it, and the other to take and require the sale or lease to be executed so that the defendant, the Atlantic & Gulf Railroad Company, may *use the road free of encumbrance* or hindrance from any, and claims this right to so "*use*" the branch road by virtue of this agreement. This the court enjoins, thus to that extent granting the injunction as to that particular use being made of the road. Therefore we hold, that the injunction enjoining the execution of the contract or agreement is embraced in that part of the special prayer for injunction.

Next, we hold the orders of the court and the interlocutory decrees are embraced in the prayer for general relief. Story's Eq. Pl., §40, 41. See note; Mitford's Chancery Pleadings, page 39, 41. See cases cited in note.

Where the prayer is in the disjunctive, relief will be granted, though inconsistent with the specific relief prayed when qualified by the equity of the case made. See cases

cited in note on page 41, Mitford's Chancery Pleadings, 2 Paige, 396, 1 S. and Marsh ; 1 Hawk.

III. I now propose to take up the 12th exception, as this relates to the class of exceptions above stated.

"12th, Because the order and decree appealed from orders the defendants to show cause why a Receiver should not be appointed, which is not comformable to any allegations or prayer in the bill."

Now, this order to show cause why a Receiver should not be appointed, was made after answers filed, after all the merits of the cause upon bill and answers had been fully argued, after all the equities had been disclosed pro and con.

We hold the true rule to be this :

If the facts of the case authorize it, the court will appoint a Receiver, although there is no prayer to that effect in the bill. 3d Danls. Ch. Prac., p. 1974.

IV. I now propose to take the 14th exception, to wit :

" 14th, Because the answers of the defendants completely overcame and denied the alleged equities in the bill on which said order depended or assumed to have founded."

Take for granted for argument that this exception is, yet we hold this is no ground for the reversal of the decree of the court below, but upon the contrary we hold the rule to be, that the granting of the injunction prayed for in the bill, or the decretal order, rested in the sound discretion of the Chancellor, to be governed by the nature of the case. Carter vs. Bennett, 6 Fla, p. 215. See p. 236 ; Allen vs. Hawley, 6 Fla., p. 169.

Judge Dupont in that case said, "But there is no inflexible rule to this effect, for the granting or continuing injunctions must always rest in the sound discretion of the Court, to be governed by the nature of the case. This doctrine has been fully recognized and authoritatively established by this court."

This question then is not subject to the conflicting authorities of other tribunals; it has been authoritatively settled in this State to the reverse of the 14th exception taken by the appellants.

V. I now come to the 1st, 5th and 10th exceptions, to wit:

"1st, Because the said order and decree is not based upon or sustained by any of the allegations of the bill. .

"5th, Because it is not sustained by any of the alleged equities set out in the bill.

"10th, Because the same is not sustained by the principles of law or equity applicable to the case."

We contend that the facts of the case warranted the decretal orders of the court, that to ascertain this the court will consider the merits as disclosed in the bill, and in the words of Justice Forward, " the main question is whether the bill makes out a *prima facie case.*"

The doctrine of enquiring into the merits of the case so that the chancellor may exercise that sound discretion vested in him by law, has been established by this court, and does not require authorities from us to sustain it. City of Apalachicola vs. The Apalachicola Land Co., 9 Fla., p. 347.

. It is further contended that in the case at bar the granting of the injunction is further governed by the statute of Florida, 1860, 1861, page 46, which is mandatory, and prescribes that where the affidavit is made as required by that act, the chancellor shall receive ex parte evidence of the truth of the statements of the bill, &c.

The bill of complainants was filed and the affidavit thereto drafted under this statute. We contend that it is not in the power of a defendant by filing his answers to prevent the complainant from availing himself of the first section of the act.

Under the 1st section of this act there is of record the affi-

davits of eight witnesses to support the allegations of the bill and affidavit.

It is contended on behalf of appellees that the granting of the injunction prayed for in the bill *rests in the sound discretion of the court, to be governed by the nature of the case,* even though all the equity of the bill is denied by the answers.

Chancellor Kent in Roberts vs. Anderson, 2 John. C. R. says: "That even where all the equity of the bill is denied by the answer, it is not, of course, to dissolve the injunction, as the *granting* and continuing an injunction rests always in the sound discretion of the court *to be governed by the nature of the case.*"

In Carter vs. Bennett, 6 Fla., p. 215 and 237, the court held, "when all the equities of the bill are denied by the answer, it is not, of course, to dissolve the injunction. The granting and continuing of injunctions rests in the discretion of the court, to be governed by the nature and circumstances of the case."

In the case of Allen vs. Hawley, 6 Fla., p. 168 and 169, the court says: "The injunction in this cause was granted before answer, and the general rule of practice in such cases is to dissolve the injunction, where the answer denies all the circumstances upon which the equity of the bill is founded," and cites several authorities. Judge Dupont then goes on to say: "But there is no inflexible rule to this effect, for the granting or continuing injunctions must always rest in the sound discretion of the court, to be governed by the nature of the case."

This doctrine has been fully recognized and authoritatively established by this court.

Citing Carter vs. Bennett, ibid.; Poor vs. Carlton, Summer R., 70; Bank of Munroe vs. Schemerhorn, 1 Clarke R., 303.

The position taken there by complainants is not an open

question in this State.   In the language of the present Chief Justice, it is "fully recognized and authoritatively established" by the Supreme Court of this State.

2d.  It is contended that on an application for an injunction, a Chancellor may go into the consideration of the merits as disclosed in the bill.

In IX Fla., page 347, in the case of the City of Apalachicola vs. the Apalachicola Land Co., Judge Forward delivered the opinion of the corut.   He says: "The main question is, whether the bill makes out a *prima facie* case—such a case as required the Chancellor, on the application for said injunction in the exercise of legal discretion, according to the rules of equity, and good conscience, and practice of the court to grant said injunction; or in other words, whether the Chancellor erred in refusing said injunction.   The rule of law is, that on the application for an injunction, a Chancellor may go into the consideration of the merits as described in the bill, and which are intrinsic and dependent upon its express allegations and charges," and cites Rose vs. Hamilton, 1 Dess., 137.

The second position then is likewise determined and established by the Supreme Court of this State.

3d.  It is contended that in the case at bar, the complainants have the right to introduce ex parte evidence before the Chancellor of the truth of the statements of the bill and the accompanying affidavit.

By the 1st Sec. of "an act to enlarge and define the jurisdiction, and to establish certain rules of practice in the Courts of Equity of this State;" see pamph. Laws 1860, p. 46, Chap. 1,098; it is provided—"That in all suits in equity in this State, where summary process by injunction or otherwise shall be prayed, and the bill justifies such process, and affidavit shall be made of the truth of the statements of the bill, and that the complainant is unable to give bond of indemnity or other security, the Chancellor shall receive ex parte

80            SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

evidence of the truth of the statements of the bill and of the accompanying affidavit; and if they shall appear to be true, shall grant such process without requiring such security."

The bill of complainants was filed and the affidavit thereto drafted under this statute. There is no discretion in the Chancellor, but in the words of the statute—"he *shall* receive ex parte evidence of the truth of the statement of the bill and of the accompanying affidavit."

The statute is mandatory, and was intended, as its title describes, to "enlarge the jurisdiction" and to "establish" certain rules of practice in this State. Its object was to aid the Chancellor in exercising that sound discretion to be governed by the nature of the case in granting or dissolving injunctions, and by prescribing statutory rules of practice in equity and "enlarging its jurisdiction," to further aid the Chancellor in inquiring into the merits of the case made out by the bill, on applications for granting the injunction heretofore "authoritatively" established by the Supreme Court, to be the judicial practice and policy of this State. And, further, to deny none the equitable relief secured by injunction, because of their poverty, and at the same time to secure the defendant from the granting of the injunction on the sole affidavit of complainant, where no security against injury was given by bond of complainants. In other words, the Chancellor shall receive *ex parte* testimony of the truth of the bill, and if true, the relief prayed for shall be granted by injunction, be complainant ever so poor.

The 2d Sec. of this act provides for cases when *the injunction has been granted*, and the answer comes in, and after answer filed motion is made that the injunction shall be dissolved.

That is not the case at bar, which is, the answers, are filed *not to dissolve* the injunction but *to prevent the granting of an injunction.*

The statute does not provide for such a case, and we con-

tend that it is not in the power of a defendant, who has been served with notice to appear and show cause why an injunction should not be granted by filing his answer, to prevent the complainant of availing himself of the 1st Sec. of this act.

But if defendant desires to avail himself of the 2d Sec., the better practice seems to be that he should resist the granting of the injunction, and if granted, file his answer and then apply to dissolve the injunction immediately, and then proceed under the 2d Sec.

That the statute does not provide for the case at bar, where the answers are filed before the granting of the injunction, and to resist the prayer for said writ, we contend is clear.

Under the 1st Sec. the complainant has presented to the Chancellor the affidavits of eight witnesses, to sustain the statements of the bill and of the accompanying affidavit.

It is not contended that the court will commit itself to points or questions that may arise at the final hearing.

4th. We contend that the nature of this case presents such an equity and exhibits such facts in the complainants' bill, whose statements are sustained by the ex parte evidence, as to require the Chancellors in the exercise of a sound discretion, to grant the injunction prayed for.

1st. In considering the motion for the granting of the injunction, the court will only look to the facts that are responsive to the bill, and will presume against defendant when he has not answered what he ought to have answered. Younge & Bryant vs. McCormick, 6 Fla., page 369; citing Moore vs. Jerrill, 1 Kelly, 7; Jones vs. Lanely, 2 Ired. Equity, 278; Dalrymple vs. Shepard, ibid., 153, 3 Ired. Equity, 153, 1 Eden Inj. (by Waterman) 146.

2d. Where a new equity is set up by the answer, to avoid that set up by the bill, the court will not regard it on the

motion.—Younge & Bryan vs. McCormick, 6 Fla., 369; 3 Ired. Equity, 170.

The P. & G. R. R. Co. in their answer admit that they made a contract with the C. S. and its authorities, whereby the C. S. went into possession for the purpose of completing said road, and by whom complainants were put into possession for the purposes aforesaid, (see the answer), but attempt to evade this by setting up an alleged violation of said contract by the C. S. entering into the agreement set forth in exhibit "A" with the Florida Railroad Co.

They show no steps taken by them to enforce their rights. The court will presume against them for not exercising legal rights, if any they had.

We contend that part of the answer makes them privy to the contract between complainants and the C. S.

3d. The claim of complainants is resisted by the A. & G. R. R. Co. as being illegal and not capable of being enforced in any court, on the ground that it was a contract entered into to aid the C. S. in its rebellion, and therefore in violation of the constitution and laws of the United States.

We contend that such a defense cannot be set up by defendants, most assuredly by the P. & G. R. R. Co., because by their answer they admit they entered into a contract with the C. S., relative to the completion of this road, and rely upon a breach of the contract by the C. S., nor by the A. & G. R. R. Co., because *if the position was true*, it is for the U. S. to avail themselves of it, and not the defendants.

The right of Spratt & Callahan to their retention and possession of such road could, were this be true, be only taken from them by the judgment of a court of the U. S., for aiding and assisting the rebellion, under the acts of Congress. That judgment could not be obtained, because Spratt & Callahan have been pardoned, which pardon is on file in this case.

But it is contended, that until the complainants are de-

prived of their property, to-wit: the work, and labor, and materials expended on the road, by the judgment of a court of competent jurisdiction, in favor of the U. S., the complainants cannot be estopped by that defense from relief in equity.

Further, it is contended that complainants did have a legal right to make such contract at the time.

The leading case on this subject, determined by a full bench of the Supreme Court of the U. S. in 1862, (see Prize Cases, 2 Black, U. S. S. C. Reports, page 635,) established the doctrine. (See page 669.)

1st. That it was civil war and not rebellion.

2d. That a civil war is never publicly proclaimed *eo nomine* against insurgents—its actual existence is a fact in our domestic history, which the court is bound to notice and to know.

3d. *Civil war existed* and hostilities might be prosecuted on the same footing as if those opposing the government were foreign enemies invading the land.

4th. Each party is deemed a belligerent nation, having the sovereign rights of war.—2 Brown, U. S., ibid., 669; Santissima Trinidad, 7 Wheaton, 337; 3 Binn., 252.

The court differ *as to the time when the civil war commenced.* The minority held that insurrection, and not civil war, existed up to the date of the act of Congress 13th July, 1861, but that civil war was declared to be in existence by that act, and that the civil war, thus by Congress declared, carried with it belligerent rights.—See Black. C, 4 vol., §77. See the authority in Vattel above cited.

Hence, we contend that the C. S. had belligerent rights, and that the C. S. were empowered to do all acts in conformity to civil war, has been solemnly determined by the Supreme Court of the United States, and is a full answer to that part of defendant's answer, and proves that the contract alleged in complainants' bill was a legal contract.

But suppose that it was not the case, then we hold that there is an *implied contract* created by law between the Pensacola & Georgia R. R. Co., they having received the use and benefit of complainants' skill, work, and labor, and materials, furnished and expended in the improvement and and enhancing the value of said branch road by complainants' labor. The law raises an implied promise on their part, to pay to the complainants the just compensation for said benefit received by them.

Again, even if this were not so, we hold the rule to be this: That in equity, the general maxim of *pari delicto*, &c., does not always prevail, circumstances of the *parti* case often form exceptions, and when it is necessary relief will be granted.—Bellamy vs. Bellamy, 6 Fla., 103.

Eastbrook vs. Scott, 3 Vesey, Jr., 456. In that case it was held "that the bill showed that the bonds were a fraud upon the creditors." The defendants admitted it, yet the bonds were ordered to be delivered up.

Austin's adm'x, vs. Winston's ext'r, 1 Hen. & Man., 33; Hill on Trustees, 164; Williams vs. Avant, 5 Iredell, 50; 4 Randolph's Reports, 372; 8 Leigh's Reports, 512; Hughes vs. Orchard, 1 Wallace, 73.

We hold it would be against all equity to allow the defendants who, during the war, followed the C. S., and were loud in their declarations of support to that cause, to now claim the use and benefit, and take to themselves the work, labor, skill and materials of complainants, by which their road was and is vastly enhanced in value, on the ground of the disloyalty of the complainants to the United States.

It is well said, corporations have no souls; if there was any doubt of that fact, this position assumed by these Railroad Companies to defeat "the laborer of his hire" would settle the question.

They are in the same status as to the war as complainants,

See the case of the Venice, page 274, 2 Wallace, and Mrs. Alexander's case, 2 Wallace, page 419.

We hold that complainants have an equitable lien on the branch road from Live Oak Station to the Florida Line, for their skill, work and labor expended thereon, and for the materials furnished in improving and completing the same; and that they had a right to possess and retain said road until compensation for the same is made.

Judge Story defines this equitable lien to be "not in strictness either *a jus in re* or *a jus ad rem*, but it is simply a right to possess and retain property, until some charge attaching to it is paid or discharged. It generally exists in favor of artisans or others, who have bestowed labor and services upon the property in its repair, improvement and preservation."

Again he says: "It is often created and sustained in equity where it is unknown to law."—1 Story Jurs., §506; Webb's Lyon, 5 Ire. Eq., 67.

Judge Story says in 2 Story, §1,237: "But Courts of Equity have not confined the doctrine of compensation, or lien for repairs and improvement, to cases of agreement, or of joint purchases; they have extended it to other cases, where the party making the repairs and improvements have acted *bona fide* and innocently, and there has been a substantial benefit conferred on the owner, so that *ex æquo et bono*, he ought to pay for such benefit. So if the true owner stands by and suffers improvements to be made on an estate, without notice of his title, he will not be permitted in equity to enrich himself by the loss of another; but the improvements will constitute a lien on the estate."

The maxim, "*jure natura equm est, neminem cum alterius detrimento et injuria fim locupletum.*" See also 2 Story, §1239.

It is laid down as a general doctrine of the civil law, "that those whose money has been laid out on improve-

86 SUPREME COURT.

P. & G. & A. & G. C. R. R. Co.'s vs. Spratt & Callahan—Argument of Counsel.

ments of an estate, such as making a plantation, or erecting buildings upon it, or augmenting the apartments of a house, or for other like cause, have by civil law a privilege upon those improvements, as upon a purchase with their own money." See 2 Story, §1236, as to money expended by one of joint purchases for money expended in repairs and improvements, having therefore a lien on the land.

I use the language of Judge Law, counsel for plaintiff in error in Collins vs. The Central Bank, 1 Kelly, 452.

"It was our work, labor, money and materials which conferred its value on the road."

"Receiving the benefits of these improvements, they are bound equally with the owners to pay for them. This is the highest equity and the highest morality."

The justly deserved high reputation and position at the bar of Judge Law, and the fact that he is counsel on the other side of this case, induces me to give the above as authority, especially as in the case of 1 Kelly he was sustained by the Supreme Court of Georgia.

We hold that the rights of complainants are founded in natural justice. Judge Warner in delivering the opinion in Collins vs. The Central Bank, 1 Kelly, at page 458, says : "It was not intended to violate that principle of *natural justice* which exists in favor of those whose labor constructed the road and who furnished materials and equipments therefor."

Courts of equity treat the lien as a *natural equity*, having its foundation in the earliest principles of courts of equity. 2 Story, §1220.

Now, the answers do not deny the work and labor and materials furnished, as alleged in complainants' bill; and the statements are proven in this respect to be true, by the evidence of the engineer of the C. S., J. M. Fairbanks, and by that of Mr. Wells, the superintendent of Spratt & Callahan, who had charge of the work, and under whose personal

superintendence it was done, both give the value and depose as to its correctness.  The chief engineer of the Atlantic & Gulf R. R. Co. deposes as to the work being done by complainants and as to its value, and in the value he is sustained by the deposition of an adept—other depositions proved the work to have been performed by complainants.

The allegations in complainants' bill as to their never having voluntarily surrendered the possession of the road is sustained by the affidavit of the engineer in charge of C. S. at the time, and Wells, the superintendent, deposes that at the time of the surrender, complainants had some fifty or more hands at work on the road, and that they were not removed until *after* the surrender.

The insolvency of the Pensacola & Georgia Railroad Co. is not denied by the answer, not that the complainants are without relief, unless the demands for compensation shall be satisfied out of said branch road.

This is not a case where the defendant has a right to prefer creditors, hence the authorities where a court of equity refused an injunction on the ground of insolvency, has no application to this case, as they are all predicated on the right of the defendant to prefer creditors.

In the case of Yonge vs. Bryan, 6 Fla., 369, where the court granted a writ of injunction to enjoin the collection of the purchase money of land, on the ground of defective title after the vendee had possession, one of the grounds in that case was, " that defendant is insolvent and unable to respond to damages in case of recovery of warranty."  The court there say, " the defectiveness of title to part of the property, and the inability of defendant, through insolvency, to compensate the deficiency on the grounds of equity set forth by complainants, and are sufficient of themselves to entitle them to the injunction," although the answer in that case alleged " that they are sufficiently protected by warranty."

The defendant attempts to evade the equities of complain-

ants' bill by setting up a lease, and say the Atlantic & Gulf R. R. Co. is a purchaser for valuable consideration without notice. The agreement itself shows this to be unfounded. On its face it shows to have been an agreement entered into petween the Presidents of both companies in the city of Savannah, Georgia.

It is in violation of law and of the policy of this State, and after the agreement was entered into, the legislature refused to allow the road to be sold, except for cash, and prescribed what disposition should be made of the money, to wit: The extension of the railroad from Quincy, West. The 3d article of the agreement shows the Presidents knew at the time that there was no legal authority for the act contemplated, and it was therein covenanted that the Pensacola & Georgia Railroad Co. should, at the next session of the General Assembly of the State of Florida, cause the conveyance to be authorized by statute.

This was denied by the legislature and the act above quoted passed. See Pamphlet Laws 1866-'67, page 45. The answer shows that in violation of said declared policy and law of the State, the defendants have attempted for stock in the Atlantic & Gulf R. R., under the name of a lease, to violate the law and to dispose of said branch road as fully as if by absolute sale and conveyance of the franchise, rights and privileges, &c., of the P. & G. R. R. Co. therein. See 4th sec. of agreement ; and that by virtue thereof the Atlantic & Gulf R. R. Co. went into possession and expended thereon large sums of money, and are now running and using the branch road.

We hold that the Atlantic & Gulf Railroad Company never were legally in possession, that all their acts and doings under said agreement are in violation of law and the rights of complainants.

That said agreement *is a fraud on complainants' rights*

*and cannot be executed in any court in this State,* and should be enjoined by a court of equity.

That the power and authority of the Pensacola & Georgia Railroad Company is curtailed by their charter and the Internal Improvement acts of this State, and from them justly derived its authority, and that agreement, and the rights of defendants thereunder so claimed by the Atlantic & Gulf R. R. Co. is in violation of said acts and charter and a fraud on complainants' rights. See Florida, Atlantic & Gulf Central R. R. Co. vs. Pen. & Ga. R. R. Co., 10 Fla., 147.

In that case the court at page 170 say : " That it is the right of an individual or corporation having vested rights to enjoin another corporation where the damage about to be done is of a permanent and irreparable character, and especially where the defendants seek to do it under cover of a charter." 1 American Railway cases, 278. In that case the Judge, speaking of the power and propriety of granting an injunction, says : " This is more especially a ground of interference, when the party complained against proposes to exercise a public authority, and where the claim is to appropriate *the property* or franchise of the complainant to a purpose claimed to be public, and where the plaintiff denies and contests the right of the defendants to exercise such power."

In the case of Agar vs. The Regents' Canal Company, Cooper's Eq. Repts., 77, " the Lord Chancellor admitted that the plaintiff might have lain by and rested on his legal rights, and brought trespass, but he was also at liberty to come into chancery, in the first instance, for a preventive remedy."

In Woodward vs. Leily, 36 Penn. State R., 437, it was held, " a contract whereby the owner of land leases the same for a period of five years, and the lease stipulates to erect a building thereon during the first year of the term, a building of the value of $3000, the lessor covenanting in

addition to the annual value of the premises (which is fixed at $3000) to pay to the lessee when the building shall have been completed, the sum of $1,500, although in one aspect an improvement, lease is *nevertheless* as to mechanics and material men, a contract for the erection of the building, payable partly in money and partly out of the profits of the land, and the estate of the lessor is bound by the mechanics' lien," cited in vol. 21, U. S. Digest.

In the case of the People vs. New York, 32 Barbour R., 102, it was held, that "a corporation proposing to make a ten years' lease of an important ferry in violation of law, may be restrained by injunction."

We hold that the P. & G. R. R. Co. and the Atlantic & Gulf R. R. Co. are confederating together to the injury of and in violation of the rights of complainants under the agreement.

The strict construction of Legislative grants to a corporation has become a settled doctrine of American law, which is applied with more stringency *where private rights are to be interfered with*, or important functions of Government are to be abridged by them. Pierce on American Railroad Law, page 9.

In the act of 1866, amendatory of the charter of the P. & G. R. R. Co., the sale is required to be made for cash; there is no power therein conferred to carry out this agreement whereby the defendants claim to deprive complainants of their equitable rights.

The rule of law on this subject is laid down in Pierce on American Railway Law, at page 10, to be "the restrictions on the powers expressed in the charter are to be enforced against the company although the effect is to render the powers worthless; and if the powers cannot be executed without disregarding the restrictions coupled with them, they cannot be executed at all."

In England the uniform decisions hold that a railroad

company cannot lease its road to another company. Pierce A. R. R., p. 397 and 398. The same author says at page 402 : " The English decisions affirming the invalidity of the contracts of the company by which it attempts to transfer its corporate privileges and responsibilities have been incidentally approved in this country. See the King vs. the Severn & Wye R. Co., 2 B. & Ald., 646 ; Reg. vs. The Eastern Counties R., 10 Adol. & Ellis, 531 ; Reg. vs. South Wales R. Co., 14 Adol. & Ellis, (N. S.) 902 ; Clark vs. Washington, 12 Wheaton, 46, 54 ; Winchester & Lexington Turnpike R. Co. vs. Vermont, 5 B. Munroe, 1 ; Arther vs. Commercial & R. R. Bank, 394 ; Pierce vs. Emery, 32, N. H., 507, cited in note ; Pierce Am. R. R. Law, p. 515 and 517 ; Redfield on Railways, §205. See note on page 475 ; Pierce American R. R. Law, p. 85, 88, 89, and cases there cited to show that injunctions have been issued by courts to restrain corporations from executing acts not authorized by its charter and therefore unlawful.

The case of Dunn vs. Worth, 24 Mo., 493, cited in Redfield on Railways, §123, is not in point ; that was a case where a lien was claimed under the statute of Missouri. We do not claim there is any statutory lien. The court decided that justly, but it did not decide the question at bar. The equitable right to restrain the possession until compensation is made for the work and labor ; to decree adversely to this would be, as we have already shown, to decree against a right founded in natural justice.

The statements of the bill that defendants had notice is, sustained by the affidavit of Joseph B. Stone, who says : " he was then chief engineer of the Atlantic & Gulf Railroad Company," (one of the defendants) " and that while acting as such engineer he had the means of knowing that said connection Railroad was built by Daniel Callahan & James W. Spratt." This is the sworn statement of the chief

engineer of the defendant, the Atlantic & Gulf R. R. Co., at the time when complainants were building said road.

And the affidavit of Mr. Wells, the superintendent in charge of the work and road for complainants, tells of Mr. Latrobe, the former chief engineer of the P. & G. R. R. Co., removing tools of that defendant for deponent to work on the bridge, and that he (deponent) himself returned the tools to the Pen. & Ga. R. R. Co.

Again, the law presumes they had notice : 1st, it is shown that in October, 1866, a suit was brought at law against the Pen. & Ga. R. R. Co. on an implied promise to pay for the work and labor on this very portion of the branch road for the recovery of that claim herein applying to be enforced and on the like contract seeking relief in equity. See second count in the declaration in exhibit A, in complainants' bill, and 3d and 4th in ——— for the wrongful conversion. The doctrine of "*lis pendens*" applies here.

And it will be remembered that this suit was brought and was *pending prior* to the meeting of the General Assembly of 1866, at which the Pen. & Ga. R. R. Co. attempted to have their charter amended to enable them to carry out their *secret agreement* with the Atlantic & Gulf R. R. Co., and which was denied by the legislature, but was amended and shaped into the present statute above quoted, for the amendments hereto made by the Senate of Florida. See Senate Journal 1866, p. 161, 154, 181, 195.

Again, the answer of the Pen. & Ga. R. R. Co. wherein it alleges the various matters between it and the agent of the C. S. relative to the Fla. R. R. Co., proves they had notice. The law is laid down in Soule vs. Downes, 7 Cal., 575, cited in annual Digest, 1859, vol. 19, page 453, that "those dealing with property during the progress of building on it are charged with notice of the builder's lien."

And again, in the answer of the Pen. & Ga. R. R. Co. where they attempt to avoid complainants' rights by

saying " *that in case defendant had no authority or power* to prevent the complainants from executing the contract they had made with the Confederate States, through their agent, with respect to this branch, and if it had attempted it, the complainants would have heeded its remonstrances or objections as much as the Confederate States heeded its objection to the contract with the Floridas Railroad Company and their using the branch road under said contract."

Herein the Pen. & Ga. R. R. Co. not only admits they knew complainants were executing said contract and performing work and labor and furnishing materials in the improving and completing of said road, but that the defendant, the Pen. & Ga. R. R. Co., stood by and made no objections thereto, nor made any remonstrances to Spratt & Callahan, but gave an excuse for their silence.

We hold that in that part of their answer they had admitted the allegation of complainants' bill, and by their own admission of remaining silent while complainants were making repairs and improvements, they show their responsibility to compensate complainants for said work and labor and materials, from which they have derived great benefit.

The owner who stands by and sees work done for another on his land without disclosing his interest, is subject to the mechanics' lien." Donaldson vs. Holmes, 23 Ill., 85, cited in U. S. D., 21, page 355, and see 2 Story Eq. Juris., §388 and 385. But on the other hand it is shown in the answers themselves that complainants did not have notice of the unlawful agreement sought to be entered into by the defendants. The exhibit shows it to be an agreement entered into between the Presidents of the Pen. & Ga. R. R. Co. and the Atlantic & Gulf R. R. Co. at Savannah : the law required three months' notice to amend the R. R. Charter, that public notice required by the constitution, made before the act of 1866, amending the Pen. & Ga. R. R. Co. Charter, showed complainants that they did not have at the time

any such power; but that they would apply for such power, and the act shows what the legislature authorized them, the defendants, to do. The complainants call upon them to discover what they have done. The agreement is disclosed by the answers, as they were compelled to do, and there is discovered the illegal contract under which the Atlantic & Gulf R. R. Co. claims, and by virtue of which defendants attempt to deprive complainants of that equitable relief to which they are entitled : to enforce their right to be compensated out of the branch road for the money, work, labor and materials expended thereon by them, and to prevent the defendants from completing the fraud attempted upon the rights of complainants.

Hence, the nature of this case we contend is such that required the Chancellor, in the exercise of a sound discretion, to grant the suit prayed for, and enjoin the defendants from continuing the irreparable injury and mischief to complainants' rights.

The authorities relative to a refusal to grant injunctions in cases of doubtful title are not applicable to the case at bar. All these cases are predicated on the principle that a court of equity will not enjoin waste alleged by one whose title is doubtful to the property upon which the waste is alleged to be committed. That before the chancellor will grant an injunction to stay waste, the complainant must first exhibit a title in himself.

But this is not a case of waste, nor is it a case of doubtful title.

The complainants allege no title in themselves, on the contrary they disclaim it and call upon the court to make the property respond to their claim, be the owner whoever he may. They allege no title in themselves, but a right to possess and retain the branch road until compensation is made for the money, work and labor and materials expended by them in its repair, erection and imparting an additional

value to the road, and call upon a court of equity to enforce that right to compensation by preventing the defendants from using or molesting or interfering with said road until they are paid; and this right founded in natural justice, to-wit: to be compensated for their work and labor shall be satisfied by those to whom benefit has accrued.

The answers exhibit the necessity for the exercise of the power of the chancellor to prevent defendants from not only using the road and depriving complainants of the right of retention until compensation is made, but to prevent them from completing a contract in violation of the law of the land, and the rights of complainants and in fraud of their equitable lien or right to compensation out of the product of their labor to which only they can look for compensation, owing to the insolvency of the Pen. & Ga. R. R. Co., not denied by the answer, showing the general property of the company to be encumbered with prior liens.

We hold that where a right is given to retain, a court of equity will enforce that right. We have already shown this is an equitable right and founded in natural justice.

The principle upon which courts of equity act on the lien of land is, " that a person who has gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not to pay the full consideration, money." 2 Story, §1219.

Again the same author says, ibid., §1216 *a* : " Courts of equity will give aid to the enforcement and satisfaction of liens in a manner utterly unknown to law."

In Brent vs. Bank of Washington, 10 Peters, 613, Mr. Justice Baldwin, delivering the opinion of the Supreme Court, said, " Whatever may be the defects of a *bona fide* creditor, equity will protect him in their enjoyment. Its action is on equitable rights by equitable remedies or legal rights, for which the law provides no remedy, or none so adequate as equity, so beneficial or complete."

In Collins vs. Central Bank, 1 Kelly, 457, the court say, " the convenience of commerce and natural justice are on the side of liens, and, therefore, of late years, courts lean that way."

It is contended that Courts of Equity favor equitable liens to the exclusion even of judgment liens. See the numerous cases cited inthe opinion of the Chancellor in the matter of Howe, 1st Page, 127.

. In White vs. Carpenter, 2 Page, 266, the Chancellor reaffirms the doctrine laid down in "the matter of Howe," and says, " at law a judgment is a general lien upon all the legal interest of the debtor in his real estate, but in Chancery that general lien is controlled by equity, so as to protect the rights of those who are entitled to an equitable interest in the lands or proceeds thereof."

Again, we hold that the complainants have a lien by usage; they are railroad contractors. Judge Story says, " liens generally exist in favor of artisans and others, who have bestowed labor and services upon property in its repair, improvement and preservation." 1 Story's Eq., §506; Chase vs. Westmore, 5 M & Sel., 180.

Every bailee has a lien who, by labor or skill, increases its value. McIntyre vs. Carver, 2 Watts & Sergt. 392; Grinnell vs. Cook, 3 Hill, p. 491; Baudor vs. Barnett, 54, C. L. R., page 531.

Ownership is not material in cases of general lien. Lord Campbell then said, " I think it equally exists, the party claiming it having acted with good faith, although they turn out to be the property of a stranger."

It is a general doctrine that a party having a lien has a right to repossess himself of it when he has been fraudulently deprived of the possession. 9 C. L. R., 1 Carrington & Payne; Wallace vs. Woodgate, 477; 32 C. L. R., 7 do. do; Decis vs. Stockly, Ox. 3; Benedict vs. Murray et al., 301, 322.

A delivery without his consent does not affect his rights. Partridge vs. D. College; 5 N. H., 288, nor by a sale and delivery without his assent. *Ibid.*

In equity they exist independent of possession. Ex parte Foster; 2 Story, 131.

We hold that Courts of Equity will follow the law in principles so well founded in natural justice.

As to liens, by the usage of trade, both the fact and the extent of the usage are matters of evidence. 3 Parson on Contracts, (ea. 1864,) page 239.

This statement of alleged lien in complainants' bill is sustained by the affidavit of David Wells.

Hence we say that the decretal orders of the court below should not be reversed, or that, in case of their reversal, this court should grant us such equitable relief, as the record discloses our right to be compensated for the services rendered and materials provided out of said branch road, that such rights are founded in the highest equity and highest morality; which will be enforced by the equitable remedies in the power of this court to bestow.

Chief Justice DuPont being disqualified by law to sit in this case, Hon. B. A. Putnam, Judge of the Eastern Circuit, was called in and sat in his place.

DOUGLAS, J., delivered the opinion of the Court:

In this case a bill was filed in the Circuit Court of Columbio county on the 3d day of April, 1867, by James W. Spratt and Daniel Callahan, asking, among other things, that the Chancellor would grant an injunction to restrain the defendants, the P. & G. R. R. Co. and the A. & G. R. R. Co., from running locomotives and cars over the branch road from Live Oak Station to the Georgia and Florida boundary line, or any part thereof, or committing waste thereon, or in

any way or manner using the said branch road from Live Oak Station to the Georgia and Florida boundary line, until the further order of the court. The complainants also pray an account may be taken of the amount due them for work and labor and materials, and that the court would decree a sale of the said branch road to satisfy their claim and demand, when ascertained.

There is also a prayer for such further or other relief as the nature and circumstances of the case may require.

The material statements in the bill necessary now to be considered are:

1. That the said branch road from Live Oak Station, in Florida, to the Georgia boundary line, was placed in the possession of the complainants by the military authorities of the Confederate States for the purpose of altering, improving and repairing the same, under an agreement between the Pensacola & Georgia Railroad Company and the Confederate States.

This statement is denied by the answer of the P. & G. R. R. Company.

2. That the complainants went into possession of said branch road under a contract with one Minor Merriweather, a Major of Engineers in the military service of the Confederate States, and that the said Minor Merriweather then placed the complainants in possession of the said branch road by the authority of the P. & G. R. R. Co., one of the defendants, under a contract between the P. & G. R. R. Co. and the Confederate States.

This allegation is denied in the answer of the P. & G. R. R. Co., one of the defendants.

3. That the complainants entered into the possession of said road under their contract with the Confederate States, and performed certain work and supplied materials to the amount of $37,379.60.

To this allegation of complainants the defendants say "they know nothing."

4. The bill further states, that the complainants have a lien on each and every portion of said branch road for the payment of said sum of $37,379 60-100, and that the said lien has never been lost or surrendered by complainants.

This lien is denied in the answers of the defendants.

5. That the P. & G. R. R. Co., without the consent of, and in violation of the rights and lien of complainants, took possession of said branch road and refused to pay the claim of complainants.

To this allegation the defendants reply, denying that they took possession of said road, but that the same was turned over to them by the military authorities of the United States, after the close of the late civil war, and that the United States took possession of it as captured and abandoned property.

6. That since the P. & G. R. R. Co. took possession of said road, they have sold or leased the same to the A. & G. R. R. Co. for a consideration of many thousand dollars.

This is admitted in the answers and the amount of the purchase money, and the funds in which it was paid, is fully set forth.

7. That the defendants are running and using said road to the detriment in value of the same, and to the injury of the lien, and debts and claims of the complainants.

This is denied in the answers, and it is averred that the value of said road has been increased more than double since it went into the possession of the A. & G. R. R. Co., by the expenditure of large sums of money in repairs and improvements.

8. The bill alleges that the P. & G. R. R. Co., one of the defendants, is insolvent.

This is not denied by the answer.

9. That the complainants have instituted their action at

law in Leon Circuit Court against the P. & G. R. R. Co. for the recovery of their said debt, which suit is still pending and undecided.

This is admitted in the answer of the P. & G. R. R. Co.

There are many other statements and allegations in the bill, which at this time and for the purpose of deciding the questions properly raised, it is unnecessary to notice.

The argument at bar took a wide range, embracing questions proper to be considered on a final hearing, and was characterized, both for complainants and defendants, by marked ability and learning. If the case was before us on final hearing, we should feel it our duty to consider and decide all the points raised by the bill and answer and argued at bar. In the present condition of the case, the record presents an appeal from an interlocutory order of the court below from granting an injunction, and to the propriety of granting an injunction we shall chiefly direct our inquiries, leaving other questions to be settled when they properly arise.

The object and purpose of an injunction is to preserve and keep things in the same state or condition, and to restrain an act, which if done, would be contrary to equity and good conscience ; and it is the appropriate relief when the remedy at law is subsequent to the injury, and the effects cannot be adequately compensated. Jeremy's Eq. Juris., 308.

In order to support a motion for an injunction, the bill should set forth a case of probable right, and a probable danger that the right would be defeated without the interposition of the court. It is not enough that a complainant shall allege in his bill that the injury will occur to himself or property, but he must show facts to enable the court to judge if the injury will be of the character stated, before he will be entitled to the interposition of the court. 1 Randolph, 206 ; 11 Fla. Rep., 167.

In the case of the Attorney General vs. New Jersey Rail-

road & Transportation Co. the court say, " the injunction is a preventive remedy. It interposes between the complainant and the injury he fears or seeks to avoid. If the injury be already done, the writ can have no operation, for it cannot be applied correctively so as to remove it." 2 Green's New Jersey Rep., 141.

It is objected on the part of the defendants that the injunction in this case is used correctively and as a punishment; that the relief granted by the chancellor is inconsistent with the special relief prayed for in the bill, and for this and other reasons the injunction should be dissolved.

To this it is replied on behalf the complainants, that if the court shall find that the bill contains no prayer for specific relief, corresponding to the relief decreed, yet under the prayer for general relief the court may grant any other relief, though inconsistent to the relief specially asked, provided it be agreeable to the case made by the bill.

Many authorities have been cited for and against the positions assumed, but we shall only refer to a few of the leading ones.

In the case of English vs. Foxhall, the Supreme Court of the U. States held, " that under a general prayer for relief, only relief consistent with the case made in the bill can be granted. The same court decided the same point in the case of Hobson vs. McArthur, and the citations from Story's Eq. are to the same effect. 2 Peter's Sup. Ct. Rep., 223 ; 8 Cond. Rep. Sup. Ct., 229 ; 16 Peter's Sup. Ct. Rep., 195 ; Story's Eq. Pl., §40, 41, 42, 43.

On examination it will be found that these authorities do not decide the question raised in this case ; they decide that under the prayer for general relief, such relief may be afforded as is consistent with the case made in the bill, though not specially prayed for ; but they do not decide that relief may be granted inconsistent with the relief specially asked.

In the case of Hiern vs. Mill, decided by Lord Chancellor

Erskine, he said: "If the bill contains charges, putting facts in issue that are material, the plaintiff is entitled to the relief which those facts will sustain under the general prayer; but he cannot desert specific relief prayed and under the general prayer ask specific relief of another description, unless the facts and circumstances charged by the bill will, consistently with the rules of the court, maintain that relief."

It is important to ascertain what were the rules of the English Courts of Chancery on this subject, in order rightly to understand the import of this ruling of the Chancellor. Formerly the chancellors prescribed rules governing the practice of that court in all matters, even to the manner in which bills should be framed; and this was so up to the 15 and 16 Vide., ch. 86, sec. 10, when Parliament passed an act to amend the practice of the Court of Chancery.

The length of a bill, with its charging part, and its pretences, was found to be inconvenient and unnecessary, and this act was passed in order to render the practice simple and easy in the preparation of bills and answers. " This statutory direction, says Mr. Daniel, does not alter the rules in force previously. That rule was, that when the prayer did not extend to embrace all the relief to which the plaintiff might at the hearing show a right, the defect in the relief might be supplied under the general prayer, provided that such relief was consistent with that specifically prayed, as well as with the case made by the bill, for the court would not suffer a defendant to be taken by surprise, and permit a plaintiff to neglect and pass over the prayer he had made, and take another decree, even though it were according to the case made by his bill." Daniel's Ch. Pl. and Prac., 383.

From this it will be seen that when Lord Chancellor Erskine said, "that the plaintiff cannot desert specific relief prayed and, under the general prayer, ask specific relief

of another description, unless the facts and circumstances charged by the bill will, consistently with the rules of the court, maintain the relief," he must be understood as declaring that the rules of the court would not allow the plaintiff to ask specific relief of one kind and get special relief of a different and inconsistent kind from that asked for.

In the case of Butler et al. vs. Durham, it was held by the Supreme Court of Georgia " that if there be a prayer for specific relief and also a prayer for general relief, the complainant shall have such other relief, under the general prayer, as is consistent with the case made and the special prayer and no more." 2 Kelly's Ga. Rep., 420; R. M. Charlton's Rep., 280.

In the case of Stone vs. Anderson and Treadwell vs. Brown, it was held by the Supreme Court of New Hampshire "that, under the prayer for general relief, the plaintiff may have such relief as he is entitled to, without regard to any defect in the prayer for special relief, provided it does not conflict with that specially prayed for." 6 Foster's Rep., 506 ; 44 New Hamp. Rep., 551.

The court, under the general prayer for relief, will grant such relief only as the case stated in the bill and sustained by the proofs will justify. The frame and structure of the bill in this case is for an injunction to restrain the defendants from running, using or removing locomotives and cars over the road or any part thereof, or committing waste thereon, or in any way, manner or form using the said road, to the detriment in value of the same, by wearing out the same ; and for an account of the indebtedness of the plaintiffs to the defendants, and for a sale of the road to satisfy the same.

There is nothing in this bill looking to the impounding the revenues of the road, and requiring its officers to make monthly returns of its earnings and expenditures to the court. No such decree was either necessary or proper to preserve

the property so that it might be forthcoming to respond to the plaintiffs' lien when asserted. If the facts would justify a prayer or decree for any such relief, the bill should have been framed with that view. This bill is not so framed.

The relief granted by the Chancellor is not the special relief asked for by the complainants, and if the decree made in this case is to be sustained, it must be under the general prayer for relief in the close of the bill. As to the relief to be given under a general prayer, we have seen the rule to be, that it must be agreeable to the case made by the bill, and not inconsistent with the relief specifically prayed for. Chalmers vs. Chambers, decided by the Court of Appeals of Maryland, 6 Harris & Johnson's Rep., 30.

In this case the relief asked is for an injunction to restrain the defendants from running, using or removing locomotives and cars over the road, or any part thereof, or in any manner using the said road, and also for an account and sale of the road, to satisfy the debt and claim of the complainants; and a general prayer for such relief as to the court should seem meet.

The relief granted by the decree of the Chancellor is, " that the defendants be enjoined from executing or in any wise carrying into effect the agreement entered into between the President of the P. & G. R. R. Co. and the President of the A. & G. R. R. Co., relative to the sale or lease of said branch road, and that the A. & G. R. R. Co. be enjoined from paying over to the P. & G. R. R. Co, any sums of money growing out of the consideration upon which the aforesaid agreement, contract, or attempted sale or lease was made.

2d. That the A. & G. R. R. Co. be enjoined, until the further order of the court, from disposing in any manner whatsoever of any of the incomes and earnings of said branch road, except in the payment of the necessary repairs and the necessary expenses of running and operating said road.

3d. That the defendant, the A. & G. R. R. Co., do make to this court a monthly report showing the gross amounts of its receipts from the said branch road, extending from Live Oak Station to the Georgia boundary line, and also the amount expended for repairs and the expenses of operating said road.

4th. " The same order as the above against the P. & G. R. R. Co."

5th. " That the defendants do appear before the Chancellor, at his Chambers at Lake City, on Friday, the 15th day of May, 1867, to show cause, if any they have, why a Receiver shall not be appointed in this case."

We are now called upon to decide if the relief granted is agreeable to the case made by the bill, and not inconsistent with that specifically asked. The statement of the special prayer for relief and the relief granted answers the question, for it would be difficult to conceive anything in Chancery proceedings more inconsistent than the prayer for specific relief in this case, and the decree rendered.

The complainants ask that the defendants be restrained from running their cars and locomotives over the road to its injury and their detriment. The decree responds to this prayer of the complainants by permitting the defendants the free use of the road, but impounds the revenues arising from its use. The relief asked for is refused, but something else, wholly inconsistent, and to the great injury of the defendants, is granted. Was there any obstruction to the court's granting the particular relief prayed? If not, the plaintiffs could not abandon that asked and take a different decree under the general prayer. Allen vs. Coffman, 1 Bibb R., 469; Thompson vs. Smithson, 7 Peters' Rep., 144; Read vs. Cramer, 1 Green. Ch. Rep., 277.

In this case we can see no obstruction to the granting by the Chancellor the particular relief asked, if it was proper to issue an injunction at all.

14

The complainants charge in their bill the insolvency of the defendant, (P. & G. R. R. Co.,) and on the argument this was urged as a good ground for issuing the injunction.

The insolvency of the debtor is never a sufficient reason of itself for the exercise of the extraordinary power of the court by way of injunction, and courts have never acted upon the suggestion of insolvency in the debtor unless there was some other equitable ground for its interposition.

The case of Yonge & Bryan vs. McCormick, cited from 6 Fla. Rep., 370, is not in opposition to this recognized principle of equity. In that case the facts were as follows: The complainants had purchased from the defendant a tract of land, had paid a part of the purchase money and given their notes for the balance. The title to a part of the land was found to be in the wife of the defendant and not in himself. The bill was filed to restrain the defendant from collecting the balance of the purchase money for which the notes had been given, and it sets forth the failure of consideration because of the defect of defendant's title to the land, and also the insolvency of the defendant. Baltzell, Ch. J., in delivering the opinion of the court, says: " The defectiveness of the title to a part of the property, and the inability of defendant, through insolvency, to compensate the deficiency, are the grounds of equity set forth by complainants, and are sufficient of themselves to entitle them to the injunction."

It will be seen, from an examination of this case, that the court do not place their decision on the ground of the insolvency of the vendor, but upon that of a failure of consideration and the insolvency of the vendor combined; and that it would be inequitable to allow the vendor to recover from his debtor a sum of money for property to which he had no title, and which, if paid, he, ex æquo et bono, ought to refund.

It is urged in argument that the injunction was properly issued to restrain the defendants from committing waste by injury to or destruction of the property. To authorize the interposition of the court on this ground, the bill must set forth such a statement of facts as will warrant the exercise of this extraordinary power. To do this, it must appear to the satisfaction of the court that unless its aid is given irreparable injury would be done to the complainants, and these facts must appear in the bill to enable the court to judge if the injury will be of the character charged.

In the present case the answer of one of the defendants (the A. & G. R. R. Co.,) alleges that the value of the road has been greatly enhanced by the expenditure of large sums of money in improvements and repairs, and the court must be presumed to know that railroads, over which passengers and freights are daily transported, do not usually fall into decay, and are not liable to that irreparable injury from waste, which alone will authorize the granting an injunction to stay it.

In the case of Thebaut & Glazier vs. Canova et als., decided by this court at the last term, it is laid down that courts with great reluctance interfere with the free use and enjoyment of property by its owner, as his taste or his inclination may direct; and it is only in a case where it is clearly made out that this use and enjoyment is prejudicial and injurious to the rights of others, that it will lend its aid to restrain and abridge this free enjoyment. They should ponder long and consider well, when their aid is invoked for this purpose, before they act.

The complainants claim that they have a lien on the road for the work done and the materials furnished; that it is an equitable lien, and they are therefore entitled to the injunction granted. The existence of a lien will, it is true, authorize their going into a Court of Equity to enforce it, and will give to the court jurisdiction, but it does not follow,

because they may have a lien for the security of the ultimate payment of their claim, that they are therefore entitled to an injunction to restrain the defendants in the free use and enjoyment of their property.

If it was made clearly to appear to the court that the complainants had an unquestioned lien on the road for the payment of their demand, yet before they would entitle themselves to the interposition of the court, by way of an injunction, they must allege and show that the use of the road by the defendants would in all probability tend to its injury or destruction to an extent that would impair its value as a security for their demand, and peril its ultimate payment, when their lien shall come to be enforced in the courts by decree.

The facts contained in the record do not warrant the court in coming to the conclusion that such would be the case.

The road is within the jurisdiction of the court and cannot be removed. The answer of the A. & G. R. R. Co., one of the defendants, alleges, that by the large sums of money expended and laid out in repairs and improvements, the value of the road has been doubled, and that it is greatly more than sufficient to respond to the demand of complainants, if it shall be adjudged that they have a lien on it for the payment of their claim. Whatever lien the complainants may have cannot be lost or impaired by the action of the defendants, unless such action should result in injury to, or destruction of, the property to such a degree as to reduce its value below the amount claimed by the complainants.

No sale or transfer of the property pending this suit can convey a title that would defeat any lien they may have, and if the defendants were to attempt to impair its value by any act of waste or wanton destruction of the subject matter, to an extent that would render inadequate the complainants' security, it would be their right to apply for and

receive the aid of a court of equity to restrain the defendants until they could assert their claim by a decree.

It is urged in argument that there is no equity in the bill, and that the complainants have a plain and adequate remedy at law, In the present condition of the cause, we do not feel called upon to decide the point made by the objection. This is an appeal from an interlocutory order of the chancellor granting the injunction to restrain the defendants from the use of their road. The bill sets up an equitable lien on the part of the complainants, which is denied by the defendants in their answers. From the record we do not clearly see that any such lien exists or is established, yet as it may be in the power of complainants to establish the existence of a lien on their part, the bill will not be dismissed.

For the reasons herein set forth, we think the injunction in this case was improvidently granted, and that it must be dissolved at the cost of complainants and the case remanded to the Circuit Court of Suwannee Circuit for further proceedings, not inconsistent with this opinion.

BAKER, J., delivered the following opinion :

I fully concur in the judgment of the court, and adopt the reasons given for the reversal of the chancellor's order granting the injunction. I do not, however, concur in the expression or intimation of any opinion on the question of complainants' lien.

The case presented by the record being an appeal from an interlocutory order, the judgment rendered settles all the questions properly presented for our decision.

It is true that the counsel on both sides elaborately argued the merits of the case before us, asking a decree under the provisions of the statute authorizing this court, in cases of appeal, to make such " decree as the court below ought to have given."

The question is here presented : Ought the chancellor to have given any final decree in this case ?   I think not.

The complainants were not entitled to a decree on their *ex parte* testimony, filed for the purpose of securing the writ of injunction, which might possibly be explained or rebutted by defendants.

Neither could the bill have been dismissed, unless it failed to set forth any equitable claim.   A denial in the answer of all the equities would not be sufficient to sustain such decree.

If, therefore, the condition of the case was such that it did not become the duty of the chancellor to give a decree, this court would certainly exceed its powers in doing so.   Taking this view of the case, I do not consider it proper to express or intimate any opinion on the equitable lien claimed, which might possibly influence the chancellor in his decision or in any way embarrass this court, should the question hereafter be properly presented for adjudication.

The following dissenting opinion was delivered by Judge PUTNAM :

I am unable to concur in opinion with the majority of the Court.

The bill shows that appellees entered upon the portion of road belonging to the P. & G. R. R. Co., lying between the Live Oak station and the line dividing the States of Florida and Georgia in the month of April, 1864, under a contract made between the Pensacola & Georgia R. R. Co. and the Confederate Government, by which the latter was to put the road-bed over that portion of the line in "fit and proper condition to receive the track," to place thereon the iron, for which, as more fully appears by answer of the Pen. & Georgia R. R. Co., the Confederate Government was to have the use during the continuance of the then existing war,

and at its close was to be paid therefor by the Pen. & Ga. R. R. Co. if they could agree upon the value; failing in this, the Confederate Government was to remove the superstructure. The bill also alleges that appellees were placed in possession of said "branch road with the full knowledge of the P. & G. R. R. Co., and that they have, as professional railroad builders, expended in work and labor by them performed, and in materials by them provided and furnished, the sum of $37,379.60, in improvements upon said branch road, and for which they have not received compensation. The bill also alleges that at the close of the war appellees were still in possession of said road; that they have never delivered possession thereof to the Confederate Government, but were dispossessed by the military forces of the United States. It also alleges that they have an equitable lien thereon for their compensation; that the P. & G. R. R. Co. has received substantial benefit from their said improvements, and have paid nothing for them, and are insolvent, having no other property out of which satisfaction for their demand can be made; and it further alleges that said company has disposed, or is about disposing of said branch road to the Atlantic & Gulf R. R. Co., a foreign corporation, for the purpose of defeating their lien, and prays account, discovery, injunction and relief.

The answer of the Pen. & Ga. R. R. Co. does not deny any of the material allegations of the bill, except notice, but sets up an alleged violation of the agreement on the part of the Confederate Government, and claims that the improvements were made by appellees for the Confederate Government and not for defendants. There is no pretence that the P. & G. R. R. Co. ever gave any notice to complainants of the breach aforesaid, or at any time notified them that the P. & G. R. R. Co. would not pay for their repairs and improvements.

The answer also claims that this defendant was placed in possession of this portion of their road by the military forces of the United States.

The A. & G. R. R. Co. set up in their answer the illegality of the contract under which the repairs and improvements were made, and alleges that it is a purchase for valuable consideration without notice, and sets out an agreement under which it claims and admits it is a 'foreign corporation. The bill alleges that the A. & G. R. R. Co. had notice both of the repairs and improvements, and of their lien.

In applying certain recognized principles of equity jurisprudence to the case, as thus presented by the record, the first question for consideration is, have appellees made a case which entitles them to an equitable lien for compensation? Second, the propriety, under the showing, of granting the injunction? Mr. Justice Story, in his excellent treatise on equity jurisprudence, sec. 1217, says: "there are liens recognized in equity, whose existence is not known, or obligation enforced at law, and in respect to which courts of equity exercise a very large and salutary jurisdiction." Again, in sec. 1236, "the doctrine of contribution in equity is larger than at law, and in many cases repairs and improvements will be held to be, not merely a personal charge, but a lien upon the estate itself." In section 1237, the same author says: "Courts of equity have not confined the doctrine of compensation, or lien, for repairs and improvements, to cases of agreement or joint purchasers, but have extended it to other cases, where the party making the repairs and improvements has acted *bona fide* and innocently, and there has been a substantial benefit conferred on the owner, so that *exœquo et bono*, he ought to pay for such benefit."

Viewing this case in the light of the doctrine above laid down, the conclusion is irresistible, that the appellees are entitled to their equitable lien for compensation as against

the P. & G. R. R. Co. The company has been substantially benefitted by the repairs and improvements placed upon its road by complainants, and for which they have paid nothing.

The answer of this defendant shows that the company had knowledge of the improvements being made, for it alleges a protest made to the agent of the Confederate Government for an alleged violation of contract, yet the company gave no notice to complainants, nor did it forewarn them against proceeding with their work, but stood by and suffered the improvements to be made upon their property, whereby it is greatly enhanced in value. To permit the company thus to enrich itself at the expense of complainants, would be contrary to every principle of equity and justice.

The contract set up by the P. & Ga. R. R. Co. in their answer with the Confederate authorities under which these repairs and improvements were made by complainants, so far implicates this defendant as privy thereto, as to attach the equities of complainants and to entitle them to an enforcement of their lien for compensation out of the property in the hands of the P. &. G. R. R. Co.

Nor can I perceive that the answer of the defendants in any particular entitles them to any modification of these equitable doctrines in their application to this case. The well settled principle, *delicto*, estops them from making it available for their relief.

The agreement set up was for repairs and improvements to be placed upon the property of one of the parties, the P. & G. R. R. Co., to be compensated in part by use and enjoyment, the balance upon the happening of an event in money, by the owner, the P. & G. R. R. Co.

In the case of Woodward vs. Lively, 36 Pennsylvania State Reports, 437, cited at bar, it was held by the court that "although, in one aspect an improvement lease, nev-

ertheless, as to *mechanics and material men*, to be a contract for the erection of the buildings, payable partly in money and partly out of the profits of the land, and the estate of the lessor is bound by the lien." Here the lien was held to attach to the estate which had been enhanced in value by the improvements placed thereon, and I am unable to perceive any distinction in the cases which should change the rule there laid down in its application to the case at bar.

Whether the defence set up by the A. & G. R. R. Co. can avail to relieve the property in their hands from the operation of the lien, is a question more properly to be considered on the final hearing of the cause. Without expressing an opinion as to the validity of the contract between the two defendants touching the sale or lease of the road, it is sufficient that the bill, answers and exhibits disclose such a state of facts as eminently to justify the chancellor in the court below in his action in holding the questions presented for further consideration when the case should be submitted upon the proofs.

Having thus disposed of the question of lien, it only remains to inquire whether, agreeably to the case made by the record, the chancellor in the court below erred in granting the order from which an appeal has brought the case before this court.

This court, in the case of the city of Apalachicola vs. the Apalachicola Land Co., 9 Florida Reports, authorizes the chancellor, on a motion for an injunction, to go into the consideration of the merits as disclosed in the bill and which are intrinsic and dependent upon its express allegations and charges.

In the spirit of this decision, in a case where the answers of the defendants are filed, it would be the duty of the chancellor, for the same purpose and to the same extent, to consider the merits of the case as presented by the entire record.

The case made by the bill, upon which the correctness of the action of the court below is to be tested, may be briefly stated as follows :

1. The bill alleges permanent repairs and improvements upon the property of one of the defendants, with notice, and without objection, by which that defendant has been essentially benefitted, and for which complainants have received no compensation, and asserts an equitable lien.

2. It alleges the pendency of a suit at law for the recovery of the demand; that the P. & G. R. R. Co. is insolvent and has no other property than that by complainants improved, out of which compensation can be had, and that unless their lien is enforced upon that specific property, they are without remedy.

3. It alleges an attempted disposition of the property to the other defendant, the A. & G. R. R. Co., a corporation having its existence without the jurisdiction of this court, with notice of the existence of lien, for the purpose of defeating it.

4. That complainants are professional railroad contractors; that the repairs and improvements are of a character requiring mechanical experience and skill in their construction, and that they have never been legally dispossessed of their work upon said road.

The answer of the P. & G. R. R. Co. does not deny any of the material allegations of the bill, except the existence of the lien, and notice of the performance of the work by complainants, but sets up a breach of contract on the part of the Confederate Government, yet does not bring home to complainants notice of the alleged breach.

The answer of the A. & G. R. R. Co. sets up illegality of the contract, denies notice of the lien, and alleges that they are purchasers without notice and consideration paid, and makes exhibit of the contract under which they claim.

On application for injunction after answer, the court will

look only to the facts that are responsive to the bill and will presume against defendant when he has not answered what he ought to have answered, and will disregard new equities set up to avoid those set up by the bill. The P. & G. R. R. Co. does not deny the insolvency charged, nor that the repairs and improvements were made by complainants, nor that they had disposed of the property in controversy.

Insolvency has been held by this court a sufficient ground for granting an injunction.

Willard on Injunctions says, page 22, that an injunction may be granted where the defendants, against whom there is otherwise a good remedy at law, is insolvent or about to abscond. On page 100, the same author declares, "that it is not error to refuse to dissolve an injunction where the *insolvency* of a party, on whom the equity of the case largely depends, is charged positively upon knowledge and belief in the bill and positively denied in the answer."

While the court will abstain from committing itself to points or questions which will arise on the final hearing, it will examine into them sufficiently to enable it to determine whether the injunction should be granted or refused. The court will then balance the facts as alleged by the respective parties to enable it to come to a correct conclusion. In doing this, if complainants have made a case showing a *probable danger*, the right may be defeated and an injunction may be granted. Read et al. vs. Dews et al., R. M. Charlton's Repts., 356.

The present case is much stronger. As against the P. & G. R. R. Co. there can be no question as to the propriety of the action of the court below in granting the injunction ; and in the case of the other defendant, the A. & G. R. R. Co., it is equally clear to my mind that the facts justify the action of the chancellor. It is a non-resident corporation, in possession of the property, using it to the detriment of complainants, holding by at least a questionable claim and withdrawing

the earnings of the road from the jurisdiction of the court. The granting and continuing an injunction rests in the discretion of the court, to be governed by the nature of the case.

The order in this case is not inconsistent with the case made by the record; and it seems carefully to guard the rights of all parties, with little or no hardship or injury to either. Nor do I perceive anything in the frame of the bill inconsistent with the rules of pleading or rendering it liable to the exception urged by appellants. I am, therefore, of the opinion that the injunction granted by the chancellor should not be dissolved.